MUMBRUE, Respondent, vs. LARSON, Appellant.

*March 24—April 13, 1915.*

*Boundaries of land: Adverse possession.*

Findings of the trial court locating the boundary line between the lands of the respective parties, and to the effect that defendant had not acquired title to the strip in dispute by adverse possession, are *held* to be sustained by the evidence.

APPEAL from a judgment of the circuit court for Waupaca county: JAMES O'NEILL, Judge. *Affirmed.*

For the appellant there was a brief by *Browne, Browne & Smith,* attorneys, and *C. B. Bird,* of counsel, and oral argument by *L. D. Smith.*

For the respondent there was a brief by *John C. Hart,* attorney, and *B. R. Goggins,* of counsel, and oral argument by *Mr. Goggins.*

SIEBECKER, J.    This is an action in ejectment.    The plaintiff claims that she is the owner in fee of the strip of land in dispute containing 3.74 acres and known as "fractional section 11 of township 21 north, range 13 east," Waupaca county, and alleges that the defendant unlawfully withholds possession thereof from the plaintiff, and demands judgment awarding her possession.

The trial court found that the plaintiff is the owner in fee of the strip of land in dispute and is entitled to the possession thereof, and that she has suffered $20 damages by the wrongful possession of this land by the defendant.    This is an appeal from the judgment entered in plaintiff's favor upon the second trial of the action before the court without a jury. The first trial before a jury resulted in a verdict sustaining, the plaintiff's claims.

The record shows that Theodore Conkey surveyed and subdivided into lots "fractional section 11" and the lands of section 12 in township 21, forming the plat of the island surrounded by the Wolf river and a slough of the river on the east, as shown on the diagram on p. 479.    It is undisputed that Conkey's survey is the government survey and formed the basis of the plat of this area, that it was made in 1843, was recognized by the government, which sold "fractional section 11" as established by the Conkey survey, prior to the Perrin survey of 1852 of the land in section 11 west of the river.    It seems clear that the location by Conkey of that part

of the section line between sections 11 and 12 located east of the Wolf river is the true line, and its location determines the question of disputed boundary between the plaintiff's and de-

fendant's lands. It is shown that Perrin in surveying the lands of section 11 west of the river undertook to tie to the Conkey survey, and in doing so he attempted to locate the Conkey boundary line between sections 11 and 12 east of the Wolf river, and concluded that it was at the line M—N and

not at the line A—B (shown on above diagram) which the trial court found as the true Conkey boundary line between these sections at that point.    This difference in the location of this line gives rise to the disputed claims of the parties. Pursuant to the notes of the Conkey survey the government platted this piece of land in dispute as "fractional section 11 east of Wolf river 21—13," containing 3.74 acres, and established a line dividing sections 11 and 12 along the east margin of such 3.74 acre piece of 17.10 chains length from the water's edge of the river at the north end of such line to the water's edge of the south end of such line.    The Perrin location of the Conkey boundary of this "fractional section 11 east of Wolf river 21—13" is not in accord with this government platting, and the result of his survey disputes the location and length of this line as platted and reduces the quantity of land in this "fractional section 11" east of the river to about one half acre.    The evidence of the surveyors who testified is in sharp conflict in many respects, and the results of their surveys in locating the original boundary line here in dispute between sections 11 and 12 east of the river, as established by Conkey in 1843, are irreconcilable.    It is wholly impracticable to attempt to state the evidentiary facts and circumstances relied on in support of the respective claims of the parties in fixing the true location of this line.    We have examined the record and find that the trial court's findings of fact are supported by the greater weight of the evidence. The conclusion that the line A—B is the correct location of the original boundary established by Conkey appears to be in accord with the weight of the evidence and must stand as located by the trial court.

The evidence of adverse possession fails to show that the land in dispute was in actual and visible possession and occupancy by persons who asserted a hostile, continuous, and exclusive possession thereof to the exclusion of the true owner. The evidence fails to show that the persons whose possession

and occupancy is relied upon as adverse made an entry on the premises hostile to all the world, with the intent to hold it as their own, and that they continued to so hold it for the statutory period. The court's finding that defendant did not acquire title by adverse possession of the premises in question cannot in any view be considered to be against the clear preponderance of the evidence. There is no reversible error in the record.

*By the Court.*—The judgment appealed from is affirmed.