BURKHARDT and another, Appellants, v. SMITH and others, Respondents.

*May 4—June 5, 1962.*

134

For the appellants there was a brief by *Wilcox & Sullivan* of Eau Claire, and oral argument by *Francis J. Wilcox*.

For the respondents there was a brief by *Pat H. Motley* of Alma, and *Fugina, Kostner & Ward* of Arcadia, and oral argument by *Mr. LaVern G. Kostner* and *Mr. Motley*.

HALLOWS, J.  The only question is whether the finding of the trial court that the defendant acquired ownership of parcel X8 by adverse possession is contrary to the great weight and clear preponderance of the evidence.  Since Smith is not claiming title founded upon a written instrument or a judgment or any color of title, his claim of title by adverse possession must meet the call of sec. 330.10, Stats., which requires adverse possession for twenty years.  To sustain such a claim, only the land actually occupied is considered to be held adversely,[1] and by sec. 330.09, Stats., land is

---

[1] "330.08 EXTENT OF POSSESSION NOT FOUNDED ON WRITING, JUDGMENT, ETC.  When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other

deemed to have been possessed and occupied adversely when it has been protected by a substantial inclosure or when it has been usually cultivated or improved. No claim is made that lot X8 has been protected by a substantial inclosure for twenty years. The issue is whether the evidence shows the defendant usually cultivated or improved tract X8 within the meaning of the statute.

On July 3, 1938, shortly after the defendant purchased the lots, he commenced building a cottage which he thought was on the boundary line between his two lots but, in fact, was on the boundary line between his easterly lot No. 1 and parcel X8 and extended onto parcel X8 a distance of some 13 feet on the north side and five feet on the south. He did not discover this error for some four or five years. The cottage was completed in the summer of 1938 and a septic tank installed. In the same year Smith cleaned up his lots including lot X8 by cutting out all dead trees and all the bramble and wild bushes which he stacked and burned. He also dug up and burned all of the dead stumps. At the time of purchase, the land was wild, unimproved, and the surface was sandy with only a few patches of grass. He spaded up the entire area which was covered with weeds, raked it, and seeded it with bluegrass.

After completing the cottage, Smith married and lived there continuously with his wife during 1938 and for some years thereafter, then later used it for a summer place. These acts of Smith in 1938 are the only ones performed prior to twenty years before the commencement of this suit and must be considered as the indicia of his actual occupancy. During the subsequent years, Smith used lot X8 in various ways in keeping with the usual occupancy of a lakeshore cottage. In 1939 he built up the soil, reseeded the area, and planted trees

right, but not founded upon any written instrument or any judgment or decree, the premises so actually occupied, and no other, shall be deemed to be held adversely."

in the northeast corner of lot X8 and along the north line and even extending over the boundaries of X8. He built a fence partly around the lawn on the north and on the east. The following year, 1940, he planted other trees in the area, added a terrace, walk, and rock garden on the east side of the cottage. At various times in subsequent years, he had built on X8 a fireplace, fences approximately along the east line of X8, a rock garden, flower bed, clothesline, and swings for his children. For some period of time he had two cabins and a movable fishing shack. The cabins were sold to the Y.M.C.A. and removed. During the time they were on parcel X8, the cabins were used either by the defendant, his relatives, or rented.

The plaintiffs contend the type of use shown was not open or adverse or inconsistent with nonownership and that none of the uses excepting the main cottage was continuous for more than twenty years, and lastly, that possession was not of the entire lot. The plaintiffs rely on five cases for the proposition that cutting of grass and brush, planting of flowers, grass, and trees, and the installation of temporary and movable equipment is not an open, hostile, and notorious use. True, each of these various acts of the defendant did not continue for twenty years but they cannot be considered separately and without relation to each other, as the plaintiffs contend. The significance of the acts is to prove the continuity of the defendant's occupancy of parcel X8 which began in 1938.

The cases cited by the plaintiffs do not support their proposition. *Bettack v. Conachen* (1940), 235 Wis. 559, 294 N. W. 57, turned upon the issue the plaintiff's possession of the disputed strip of land was not exclusive and thus the owner had no notice of any intent or purpose to exclude him from the premises. We have no question of exclusiveness of possession here. Smith and his family were the only people

using lot X8. *Cuskey v. McShane* (1958), 2 Wis. (2d) 607, 87 N. W. (2d) 497, likewise involved a dispute between adjacent landowners, and sporadic acts did not show exclusive possession. In *Seybold v. Burke* (1961), 14 Wis. (2d) 397, 111 N. W. (2d) 143, the court held that adverse possession was not proven by placing several concrete monuments some 900 feet apart and which were obscured by dense brush along the boundary lines of the disputed area. There was also a dispute whether there was any difference in the appearance of the area because of the cutting of the brush by the plaintiff. Likewise, we do not consider the facts in *Ladd v. Hildebrant* (1870), 27 Wis. 135, analogous. There, some brush was cleared from the property but thereafter nothing was done and no part of the land cultivated. In *Miller v. Cumberland Petroleum Co.* (1937), 269 Ky. 525, 108 S. W. (2d) 514, adverse possession was not sustained on evidence that the members of a church cleaned up a lot, occasionally trimmed shade trees, and when weather permitted held Sunday-school services on the lot and occasionally used the lot for all-day meetings and as a parking space. These acts were too sporadic and too friendly in their character to indicate a hostile claim.

In the instant case, the several acts of the defendant would indicate to any stranger that lot X8 was usually being used as an owner would use such land in that lake-resort area and thus proclaimed he asserted exclusive ownership. We consider the acts of the defendant, in building his cottage, in removing the dead trees and brush, and in putting in a lawn, extended substantially over the whole tract of X8 and was sufficient to plant the defendant's "flag of hostility." The defendant used lot X8 and exercised such acts of ownership over it as was necessary to enjoy the ordinary use of which it was capable. Adverse possession without inclosure need not be characterized by a physical, constant, visible occupancy

or improved by improvements of every square foot of the land. The argument that one claiming adverse possession must actually lay his hands, so to speak, upon the entire lot and keep them there as if covering the premises with a mantle was soundly rejected by this court in *Illinois Steel Co. v. Jeka* (1905), 123 Wis. 419, 101 N. W. 399. Actual occupancy is not limited to structural encroachment which is common but is not the only physical characteristic of possession. Actual occupancy means the ordinary use of which the land is capable and such as an owner would make of it. Any actual visible means, which gives notice of exclusion from the property to the true owner or to the public and of the defendant's domination over it, is sufficient.

While not expressly claimed by the plaintiffs that occupany or use of every square foot of the property for twenty years is necessarily inferential, such proposition is urged by their contention the uses of Smith did not reach to the boundaries of lot X8 and only the area occupied by the cottage can be considered as adversely held. The statute requires "usually cultivated or improved," and if the cultivation or improvement in relation to the nature of the use in the area indicates the boundaries of the adverse claim and is usual under the circumstances, such use is sufficient and considered actual occupancy under the statute. "Usually improved" means to put to the exclusive use of the occupant as the true owner might use such land in the usual course of events. *Illinois Steel Co. v. Bilot* (1901), 109 Wis. 418, 84 N. W. 855, 85 N. W. 402. The doctrine of *Bilot* was reaffirmed in *Illinois Steel Co. v. Jeka, supra.*

The use the defendant Smith made of X8 was the ordinary use of which such land was capable and while each individual act or improvement did not extend for a complete period of twenty years, outside of the encroachment of the cottage, nevertheless such acts taken together and in relation to the acts performed in 1938 were consistent with the first

invasion and show a continuous and uninterrupted original use by Smith of lot X8 in the usual and ordinary way an owner would use the land surrounding his lake cottage. The defendant not only planted his flag of hostility but kept it there, waving. It is only necessary the premises should be used in such manner as to indicate reasonably the extent of hostile invasion and conquest. We believe the evidence reasonably indicates the boundaries of lot X8, considering the type and character of the area. What might be required to constitute adverse possession of a city lot is not necessarily applicable to rural or lake property in an unimproved area.

The requirement of continuity of possession as one of the essential elements of adverse possession is satisfied by activities which are seasonal in character and which are commensurate with and appropriate to seasonal uses, needs, requirements, and limitations, having regard for the location and the adaptability of the land to such use. *Kraus v. Mueller* (1961), 12 Wis. (2d) 430, 107 N. W. (2d) 467, 108 N. W. (2d) 560; Anno. Adverse Possession—Continuity, 24 A. L. R. (2d) 632.

The claim is made by the plaintiffs that defendant's intent was not hostile, partly because he made a mistake in the boundary line and partly, at least by inference, because his activity and use of the land decreased after he discovered his mistake and he did not pay taxes on the property. There is no merit in the argument of mistaken boundaries. *Menzner v. Tracy* (1945), 247 Wis. 245, 19 N. W. (2d) 257, 19 N. W. (2d) 869; *Schiro v. Oriental Realty Co.* (1956), 272 Wis. 537, 76 N. W. (2d) 355. "Hostile intent" does not mean a deliberate, wilful, unfriendly animus. If the elements of open, notorious, continuous, and exclusive possession are satisfied, the law presumes the element of hostile intent. *Illinois Steel Co. v. Paczocha* (1909), 139 Wis. 23, 119 N. W. 550; *Meyer v. Hope* (1898), 101 Wis. 123, 77 N. W. 720. "Hostility" means only one in possession claims exclu-

sive right thereto and actual possession prevents the assumption of possession in the true owner. *Mumbrue v. Larson* (1915), 160 Wis. 477, 480, 152 N. W. 150. Fifty years ago this court stated actual occupancy of land to the exclusion of the true owner, regardless of whether in good faith or bad faith, whether by mistake of boundaries, or with intent to claim the land with full knowledge the claim is wrongful, satisfies the call of the statute. *Ovig v. Morrison* (1910), 142 Wis. 243, 125 N. W. 449. The failure of the defendant to pay taxes on parcel X8 is an element to be taken into consideration in judging the character of the possession, but it is not exclusive. *Hamachek v. Duvall* (1908), 135 Wis. 108, 115 N. W. 634. An interesting review of the older cases on adverse possession is found in Helm, Adverse Possession, 8 Marquette Law Review (1924), 104.

We conclude the acts of the defendant in 1938 were open and adverse and constituted actual occupancy of tract X8 and were such as to notify the true owner and to indicate the territorial limits of the possession in view of the particular tract, its condition, locality, and appropriate use. This possession was indicated by various acts indicating ownership, which taken as a whole constituted a continuous use of lot X8 for more than twenty years. The finding of the trial court that defendant acquired ownership of parcel X8 by adverse possession was not contrary to the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.