ESTATE OF ROY E. HOLMES, DECEASED, SHIRLEY POISL, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Holmes v. Commissioner
Docket No. 27129-89
United States Tax Court
T.C. Memo 1991-477; 1991 Tax Ct. Memo LEXIS 526; 62 T.C.M. (CCH) 839; T.C.M. (RIA) 91477; September 26, 1991, Filed *526 Decision will be entered under Rule 155. Robert E. Sharp, for the petitioner. J. Paul Knap, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 105,696 in petitioner's Federal estate tax. After a stipulation of settled issues, the remaining issues for decision are: (1) Whether property reported on Schedule A of petitioner's Federal estate tax return was properly included in the gross estate, (2) whether the transfer of certain property by decedent to his daughter was partly a gift and partly a sale or, alternatively, whether the transfer was entirely a gift, and (3) whether the includable property is eligible for special use valuation under section 2032A. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. Roy E. Holmes (decedent) died on September 20, 1985. Shirley Poisl (Mrs. *527 Poisl), decedent's daughter, was appointed personal representative of decedent's estate by the Racine County Circuit Court, Racine County, Wisconsin. At the time the petition in this case was filed, Mrs. Poisl resided in Sturtevant, Wisconsin. The Farm
Prior to 1952, decedent acquired property located in Racine County and Kenosha County, Wisconsin. This property (the farm) consisted of 10 parcels of land. One of the parcels (the homestead) included a residence. In 1952, decedent agreed to allow Mrs. Poisl to cultivate and to live on the farm if she would remove the tenant. She removed the tenant and commenced farming operations in October 1952. Mrs. Poisl and her husband, Leo Poisl (Mr. Poisl), moved into the residence located on the homestead in March 1953. At some time prior to Mr. Poisl's death in 1980, they demolished that residence and built a new residence on the homestead. Mrs. Poisl (and Mr. Poisl until his death) resided on the homestead and cultivated the farm from 1953 until decedent's death. Mrs. Poisl did not pay rent to decedent. Decedent resided on the homestead from 1965 until his death and did not pay rent to Mr. or Mrs. Poisl. Mr. and Mrs. Poisl *528 repaired and maintained all of the buildings on the farm. They also paid for goods and services that were consumed by decedent or that were used to improve the property. These payments totaled $ 157,828 for the period 1957 to December 27, 1982, and $ 26,654 for the period December 28, 1982, to decedent's date of death. The checks used to pay for these goods and services did not bear notations indicating that the payments were intended as payments of a mortgage debt or as payments for the purchase of real estate. Real estate taxes were assessed and paid on parcels 1 through 6 for the years 1954 through 1985. The tax bills for those years were addressed to "D. Holmes Est., C/O Leo Poisl," "Leo Poisl," "Frank E. Holmes Estate," "Roy E. Holmes, C/O Leo Poisl," or some variant thereof. The payor of the taxes also varied. Payments were made by "Leo & Shirley Poisl and D. Holmes," "D. Holmes Est. by Leo Poisl," "Leo Poisl," or "Shirley Poisl." Decedent did not reimburse Mrs. Poisl for any of the real estate taxes that she paid. The Transfers of Property
In 1982 and 1983, with the assistance of an attorney, decedent recorded the transfer of three of the parcels to Mrs. *529 Poisl. On December 27, 1982, decedent conveyed to Mrs. Poisl the homestead for the "valuable consideration of One Dollar and other good and valuable consideration." In that deed, which was recorded on December 28, 1982, decedent warranted that the title to the homestead was "good, indefeasible in fee simple and free and clear of encumbrances except recorded easements and zoning restrictions." A State transfer tax in the amount of $ 420 was paid on this transfer. Decedent did not report the transfer of the homestead on his 1982 Federal income tax return or on his 1982 Federal gift tax return. On December 27, 1982, Mrs. Poisl granted to decedent a mortgage on the homestead in the amount of $ 135,000. The mortgage was recorded on December 28, 1982. Mrs. Poisl granted the mortgage to decedent, on the advice of her attorney, because she did not have a will and wanted to protect decedent in the event that she predeceased him. The mortgage stated that Mrs. Poisl was to pay decedent according to the terms and conditions of a promissory note that Mrs. Poisl had executed. Mrs. Poisl, however, did not execute a promissory note in favor of, and did not offer or intend to pay any consideration *530 to, decedent in connection with the transfer of the homestead. Subsequent to the transfer, she did not make any payments on the mortgage. The fair market value of the homestead, as of the date of decedent's death, was $ 140,000. On December 27, 1982, decedent conveyed to Mrs. Poisl a 40-acre parcel (parcel 8) for the "valuable consideration of One Dollar and other good and valuable consideration." In that deed, which was recorded on December 28, 1982, decedent warranted that the title to the homestead was "good, indefeasible in fee simple and free and clear of encumbrances except recorded easements and zoning restrictions." No State transfer tax was paid on the transfer of parcel 8. Decedent reported the transfer of parcel 8 on his 1982 Federal gift tax return. The fair market value of parcel 8, at the date of the gift, was $ 48,000. In 1983, decedent conveyed to Mrs. Poisl a 40-acre parcel (parcel 9). That deed was recorded on December 28, 1983. No State transfer tax was paid on the transfer of parcel 9. Decedent reported the transfer of parcel 9 on his 1983 Federal gift tax return. The fair market value of parcel 9, at the date of the gift, was $ 48,000. Both the 1982 *531 and 1983 gift tax returns were prepared with the assistance of an attorney. The Woodland Parcel
In 1978, one of the parcels (the woodland parcel) was designated (for a 25-year period) as forest cropland pursuant to chapter 77, Wis. Stat. Ann. secs. 77.01 through 77.16 (West 1989) (the forest cropland act). In 1984, an employee of the State Department of Natural Resources prepared and signed a Forest Crop Law Management Schedule (the forest management schedule), which stated: The following schedule of mandatory harvesting recommendations are intended to assist you in carrying out the required forest management on your land. They are considered a minimum plan for implementing sound forestry under the law * * *. Failure to follow them will result in * * * action to remove them from the forest crop law program. * * *
Below this statement, the following was typewritten onto the forest management schedule: "Harvest the scattered mature and overmature trees in this stand by the year 1990." The forest management schedule also stated: The underbrush is very excessive in some areas of this tract, resulting in sparse reproduction of timber tree species. Mechanical *532 removal and stump treatment with an effective herbicide is recommended.
By letter dated September 10, 1990, from an employee of the State Department of Natural Resources, Mrs. Poisl was informed that "a harvest is necessary as required under the Forest Crop Law contract." Tax Treatment
On September 19, 1986, petitioner's Federal estate tax return (Form 706) was filed. Mrs. Poisl furnished to petitioner's attorney a description of the property owned by decedent at the time of his death, and the return was prepared by the attorney on the basis of that information. The gifts to Mrs. Poisl of parcels 8 and 9 in 1982 and 1983, respectively, were included in the tentative tax base as adjusted taxable gifts. On Schedule A (Real Estate) of the return, petitioner reported the values of parcels 1 through 6 and of the woodland parcel. The fair market values of parcels 1 through 6 and of the woodland parcel, as of the date of decedent's death, were $ 370,940 and $ 63,464, respectively. On Schedule N (Section 2032A Valuation), petitioner filed a protective election, pursuant to section 20.2032A-8(b), Estate Tax Regs., to value parcels 1 through 6 and the woodland parcel under *533 section 2032A. The fair market values, as of the date of decedent's death, of other assets reported on the return were as follows: Item
Fair Market Value
Schedule B (Stocks and Bonds)
$ 352,805.99
Schedule C (Mortgages, Notes
and Cash)
23,122.03
Schedule D (Insurance on the
Decedent's Life)
11,076.06
Schedule F (Other Miscellaneous
Property)
2,909.03
On Schedule K (Debts of the Decedent, and Mortgages and Liens), the 1985 real estate taxes for the towns of Yorkville and Paris, Wisconsin, were reported as debts of decedent. Parcels 1 through 6 were located in the town of Yorkville, and the woodland parcel was located in the town of Paris. In the notice of deficiency, respondent determined that decedent had an "enforceable right to receive $ 135,000 as consideration for the decedent's December 27, 1982, conveyance" of the homestead to Mrs. Poisl and that that right was includable in decedent's gross estate (on Schedule C) in the amount of $ 135,000, the fair market value at the date of decedent's death. Respondent also made several adjustments to adjusted taxable gifts. For the taxable year ended December 31, 1982, respondent determined that a gift in the amount *534 of $ 5,000 resulted from the conveyance of the homestead from decedent to Mrs. Poisl. The notice of deficiency explained: The fair market value of this real property on December 27, 1982, was $ 140,000.00; and the value of the consideration received by the decedent was $ 135,000.00. The excess of the value of the property transferred over the value of the consideration received is $ 5,000.00; and this amount is subject to gift tax.
For the taxable years ended December 31, 1983 and 1984, respondent determined that decedent had made gifts as a result of the "interest free demand loan of $ 135,000.00 made by the decedent to Shirley M. Poisl." Also, respondent made alternative adjustments in the event that it was determined that the conveyance of the homestead to Mrs. Poisl was entirely a gift. OPINION The decedent's gross estate includes the value of all property to the extent of his interest therein at the date of his death. Secs. 2031(a), 2033. The gross estate includes the value of all property "beneficially owned by the decedent at the time of his death." Sec. 20.2033-1(a), Estate Tax Regs. Property in which the decedent does not have beneficial ownership is not includable *535 in the decedent's gross estate, even if the decedent had legal title to the property. Estate of Spruill v. Commissioner, 88 T.C. 1197, 1224 (1987). Generally, for purposes of the estate tax, courts first determine the legal interests and rights created under State law and then decide whether the interests and rights so created are sufficient to justify including the property in the gross estate. Morgan v. Commissioner, 309 U.S. 78, 80, 84 L. Ed. 585, 60 S. Ct. 424 (1940); Estate of Pfohl v. Commissioner, 70 T.C. 630, 633 (1978). Petitioner bears the burden of proof. Rule 142(a). Ownership of the Farm
The first issue is whether parcels 1 through 6 and the woodland parcel were properly included in decedent's gross estate. Petitioner contends that Mrs. Poisl acquired ownership of the entire farm by adverse possession in 1973 or by gift in 1953. Respondent contends that none of the elements of adverse possession or of a gift have been established. Mrs. Poisl testified that she asked decedent in 1952 "if I could have the farm" and that "He said I could have it if I would get the fellow that rented it off." This testimony and the subsequent conduct of father and daughter contradict both of *536 petitioner's present claims. The Wisconsin adverse possession statute in effect at the time that Mrs. Poisl's alleged claim accrued provided that, where a claim was not founded upon a written instrument or a judgment or decree, land that was actually occupied was deemed to have been possessed adversely only when it had been protected by a substantial inclosure or when it had been usually cultivated or improved. Wis. Stat. secs. 893.08, 893.09 (1977); see Perpignani v. Vonasek, 139 Wis. 2d 695, 408 N.W.2d 1, 6 n.13 (1987). This statute also carried over the common-law definition of adverse possession; therefore, possession is adverse only if it is open, notorious, hostile, and continuous for 20 years. Pollnow v. State Dept. of Natural Resources, 88 Wis. 2d 350, 276 N.W.2d 738, 741 (1979); Wis. Stat. sec. 893.10 (1977). Petitioner asserts that "The acts of Shirley Poisl as possessor of the property were open and notorious and [that] she claimed exclusive right to ownership." Petitioner argues that this is sufficient to satisfy the hostility requirement and that Mrs. Poisl therefore acquired title by adverse possession. If the elements of open, notorious, continuous, *537 and exclusive possession are satisfied for a 20-year period, a presumption arises that the hostility requirement has been satisfied and the burden of proof shifts to the true owner to show that it was permissive. Burkhardt v. Smith, 17 Wis. 2d 132, 115 N.W.2d 540, 544 (1962). That presumption does not arise, however, where there is evidence that the claimant's use was permissive. See Northwoods Development Corp. v. Klement, 24 Wis. 2d 387, 129 N.W.2d 121, 123 (1964). In this case, Mrs. Poisl testified that decedent told her that she could live on the farm if she removed the tenant and agreed to maintain and repair the farm. Moreover, she testified at trial that her father had given her the farm in 1953. Therefore, her possession of the farm was permissive. Where the claimant's possession is "pursuant to permission of the true owner, there could not be the hostile intent necessary to constitute adverse possession." Northwoods Development Corp. v. Klement, 24 Wis. 2d 387, 129 N.W.2d 121, 123 (1964). According to her own testimony, Mrs. Poisl's possession of the farm commenced with decedent's permission; she therefore did not possess the requisite hostile intent *538 at that time. Further, decedent moved onto the farm in 1965 (as petitioner asserts) at the invitation of Mrs. Poisl and resided at the homestead with her until his death. Thus there was no change in the character of Mrs. Poisl's possession. See Allen v. Ellis, 125 Wis. 565, 104 N.W. 739, 742-743 (1905). These facts also belie petitioner's contention that Mrs. Poisl claimed the exclusive right to possession of the farm with the requisite intent to exclude and dispossess decedent. Finally, the payment of real estate taxes by Mrs. Poisl or her husband does not conclusively establish adverse possession. See Northwoods Development Corp. v. Klement, 24 Wis. 2d 387, 129 N.W.2d 121, 124 (1964). We therefore conclude that petitioner has not established that Mrs. Poisl acquired any rights of ownership in the land by virtue of adverse possession. Alternatively, petitioner contends that decedent made an oral gift of the entire farm to Mrs. Poisl in 1953. A gift is complete only where, among other things, there is "a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter *539 of the gift in praesenti" and an "irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it." Estate of Hite v. Commissioner, 49 T.C. 580, 594 (1968). In determining whether the conveyance in question was a gift, the substance of the transaction controls. Deal v. Commissioner, 29 T.C. 730, 736 (1958). In 1982 and 1983, decedent transferred three of the farm parcels by deeds in which he warranted that he had title in fee simple to that land. He filed gift tax returns reporting certain of these transfers as gifts made in 1982 and 1983. Parcels 1 through 6 and the woodland parcel were reported on petitioner's Federal estate tax return as property owned by decedent. Petitioner argues that the attorney who prepared the estate tax return had no knowledge of the alleged gift of the farm in 1953 and that it was an error to report the property on the return. Mrs. Poisl testified, however, that she furnished to the attorney who prepared the return a description of the property that decedent owned at the time of his death and that the return was *540 prepared based upon that information. It is implausible that Mrs. Poisl would represent to the attorney that her father owned property that he had allegedly given to her more than 30 years prior to that date. Although not conclusive, this representation on the return is an admission that decedent continued to own these parcels as of the date of his death. See Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), affg. a Memorandum Opinion of this Court; Estate of Marsack v. Commissioner, 288 F.2d 533, 536 (7th Cir. 1961), affg. a Memorandum Opinion of this Court; Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989). Further, petitioner concedes that decedent did not transfer title to any part of the farm by deed until the 1982 transfers. Thus there was not an "irrevocable transfer of the present legal title" to the donee. Petitioner contends, however, that Mr. and Mrs. Poisl's acts of ownership, namely that they removed the tenant, paid some of the taxes, incurred costs for repairs and improvements, and built a new residence on the homestead, are sufficient to except the alleged transfer from the Wisconsin Statute of Frauds and that an oral transfer is *541 sufficient to convey title. The Wisconsin Supreme Court has held that, in order to enforce an oral gift, the gift must be established by clear, satisfactory, and convincing evidence. Schmitz v. Schulenburg, 236 Wis. 606, 296 N.W. 103, 105 (1941). We have concluded that decedent did not intend to give the property to his daughter in 1953. Further, these alleged acts of ownership are not inconsistent with acts that one might expect where a daughter occupies the property of her father over a 38-year period and, in any event, do not rise to the level of past performance necessary to warrant an exception to the Wisconsin Statute of Frauds. See, e.g., Schmitz v. Schulenburg, 236 Wis. 606, 296 N.W. 103 (1941). Therefore, parcels 1 through 6 and the woodland parcel were properly included in decedent's gross estate. The Transfer of the Homestead
The next issue is the proper treatment of the 1982 transaction whereby decedent transferred the homestead to Mrs. Poisl, who granted to decedent a mortgage on the same date. Respondent determined that decedent sold the homestead to Mrs. Poisl and that the mortgage represented decedent's enforceable right to receive $ 135,000 *542 in consideration thereof. Respondent also determined that the $ 5,000 excess of the value of the homestead on the date of the transfer, $ 140,000, and the value of the mortgage on that date, $ 135,000, was a deemed gift. Alternatively, respondent determined that the transfer of the homestead was entirely a gift. Petitioner contends that Mrs. Poisl granted the mortgage to decedent only to protect decedent in the event that she predeceased him and that no sale was intended or effectuated as a result of the transaction. Respondent contends that the mortgage secured Mrs. Poisl's promise to pay decedent $ 135,000 for the homestead. Respondent argues that the transaction was a sale because a State transfer tax in the amount of $ 420 was paid and that, if decedent intended to give the homestead to Mrs. Poisl, he would have reported it as such on his 1982 Federal gift tax return. Mrs. Poisl granted the mortgage to decedent so that he could continue to reside on the homestead in the event that she predeceased him. Respondent asserts that Mrs. Poisl, who was advised by an attorney to grant the mortgage, could have prepared a will to accomplish that objective. We decide this case, however, *543 based on what was actually done, not what might have been done. In this regard, what was actually done is not entirely consistent either with the conclusion that the transaction was, in part, a sale or with the conclusion that the transaction was a gift. That is, decedent did not report the transaction on his Federal gift tax return for 1982, although he reported the transfer of parcel 8 to Mrs. Poisl on that return. Decedent did not, however, report the transaction on his 1982 Federal income tax return, notwithstanding that a State transfer tax was paid thereon, and the mortgage was not reported on the Federal estate tax return. Also, the 1985 real estate taxes on those parcels were reported as debts of decedent on the Federal estate tax return. Transactions between related parties are subject to rigid scrutiny, and the presumption is that a transfer between family members is a gift. Harwood v. Commissioner, 82 T.C. 239, 258 (1984), affd. without published opinion 786 F.2d 1174 (9th Cir. 1986). In this case, although the mortgage states that Mrs. Poisl was to pay decedent according to the terms and conditions of a promissory note, Mrs. Poisl did not execute a promissory *544 note in favor of decedent, and she did not offer or intend to pay any consideration to decedent in connection with the transfer of the homestead. Moreover, the record does not reflect that decedent intended to receive any consideration for the transfer of that property. In short, there was no agreement to "sell" the homestead. Thus the mortgage did not represent an enforceable right of decedent to receive any payment from Mrs. Poisl and had no effect for Federal income tax purposes, regardless of the effect for State law purposes. Viewing the substance of the transfer in light of the entire record, we conclude that decedent gave the homestead to Mrs. Poisl in 1982, at which time he delivered to her a deed sufficient to vest legal title to that property. See Estate of Mortimer v. Commissioner, 17 T.C. 579, 583 (1951). We therefore treat the transfer of the homestead in the same manner as the transfer of parcels 8 and 9 in 1982 and 1983, respectively, and sustain respondent's alternate determination that the transfer was entirely a gift in 1982. Because petitioner presented no evidence as to the fair market value of the homestead as of the date of the transfer, we also sustain *545 respondent's determination that that value was $ 140,000. Section 2032A
The final issue is whether the property reported on Schedule A of petitioner's Federal estate tax return qualifies for special use valuation under section 2032A. If all of the requirements are met, section 2032A allows taxes on estate property to be computed on an income capitalization method of valuation of "qualified" real property, rather than on the traditional "fair market value" based on its highest and best use. Estate of Geiger v. Commissioner, 80 T.C. 484, 488 (1983). One requirement of section 2032A is that the decedent or a member of the decedent's family must have used the property for a "qualified use" for 5 or more years during the 8-year period ending on the date of the decedent's death. Sec. 2032A(b)(1)(C)(i). Property is used for a qualified use if it is used as a farm for "farming purposes." Sec. 2032A(b)(2)(A). Farming purposes means "the planting, cultivating, caring for, or cutting of trees" or "the preparation (other than milling) of trees for market." Sec. 2032A(e)(5)(C). Petitioner contends that the woodland parcel was used for a "qualified use" because it was designated *546 as forest cropland, pursuant to Wis. Stat. Ann. secs. 77.01 through 77.16 (West 1989), from at least 1978 until September 10, 1990. Petitioner argues that the State dictated when to plant and harvest trees and that decedent and Mrs. Poisl were, in effect, prohibited from performing any of the acts that would establish that the woodland parcel was used for farming purposes within the meaning of section 2032A(e)(5)(C). The forest cropland act requires the owner to practice sound forestry on the land and to follow an approved management plan. See Wis. Stat. Ann. secs. 77.02(3), 77.10(1)(a), 77.16(3), 77.16(7) (West 1989). As the 1984 forest management schedule indicates, however, that plan is only "considered a minimum plan for implementing sound forestry under the law." It is apparent from the 1984 forest management schedule that there was work to be performed. At that time, there were "scattered mature and overmature trees" that were required to be harvested by 1990. That schedule further recommended the removal of excessive underbrush that was "resulting in sparse reproduction of timber tree species." Nothing in the record indicates that decedent was prohibited in 1984 *547 from harvesting those trees. We therefore reject petitioner's assertion that decedent and Mrs. Poisl were prohibited from performing any of the acts that would establish that the woodland parcel was used for farming purposes. In any event, the record reflects that neither decedent nor a member of his family planted, cultivated, cut, or cared for trees, or prepared trees for market within the meaning of the statute. We therefore conclude that the woodland parcel was not used for a "qualified use" within the meaning of section 2032A(b)(2) and is not eligible for special use valuation. Finally, respondent contends that, even though they were used for a "qualified use," parcels 1 through 6 were not "qualified real property" within the meaning of section 2032A(b)(1). Respondent argues that the adjusted value of that property was not at least 50 percent of the adjusted value of decedent's gross estate as of the date of his death within the meaning of section 2032A(b)(1)(A) (the 50-percent test). Gifts made within 3 years of the decedent's death are considered in determining whether the properties in the estate satisfy the 50-percent test. Estate of Slater v. Commissioner, 93 T.C. *548 513, 516-517 (1989); see sec. 2035(a), (d)(1), (d)(3). After taking into account our conclusions above, parcels 1 through 6 satisfy the 50-percent test and are "qualified real property." Therefore, those parcels are eligible for special use valuation under section 2032A. To reflect the foregoing, Decision will be entered under Rule 155.