COURT OF APPEALS
DECISION
DATED AND FILED

May 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1612**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV35

IN COURT OF APPEALS
DISTRICT III

ESTATE OF LAURA M. HAYDEN,

   PLAINTIFF-APPELLANT,

 V.

RONALD PICHLER,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Pepin County: THOMAS W. CLARK, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. The Estate of Laura M. Hayden appeals from a judgment, entered following a bench trial, granting adverse possession of six

parcels of land to Ronald Pichler pursuant to WIS. STAT. § 893.25 (2023-24).[1]  On appeal, the Estate raises numerous challenges to the circuit court's decision, including that Ronald failed to prove his adverse possession claim by clear and positive evidence.  We affirm.

## BACKGROUND

¶2      At issue in this lawsuit is the ownership of six parcels of land, totaling 3.24 acres, located between Ronald's and the Estate's property. Consistent with the parties' and the circuit court's terminology, we refer to these parcels as Parcels A-F.

¶3      Clifford    and    Marlene    Pichler—Ronald's    parents—purchased 40 acres of property (the "farmstead") in 1961.  At that time, the farmstead was bordered to the north and west by property that was owned by Patrick and Laura Hayden and is now owned by the Estate.  At all times relevant to this appeal, the farmstead has been bordered by a highway to the east.  Clifford and Marlene also owned another 40 acres of property (the "Northeast of the Southeast property") that was directly south of the farmstead.  Parcels A-E are located between the farmstead and the Estate's property either to the north or west.  Parcel F is located between the farmstead and the Northeast of the Southeast property.

¶4      Clifford and Marlene divorced in 1985, and their real property was divided.  Clifford was awarded the farmstead, and Marlene was awarded the

---

[1] Because several individuals relevant to this appeal share or shared the same surname, we refer to those individuals by their first names where appropriate.

All references to the Wisconsin Statutes are to the 2023-24 version.

Northeast of the Southeast property. Shortly after the divorce, Marlene sold the Northeast of the Southeast property to Patrick and Laura, meaning the farmstead was surrounded by Patrick and Laura's property to the north, west, and south, and by the highway to the east. Clifford transferred the farmstead to Ronald in two parts—one in 1992 and the other in 2008. Of significance, the portion of the farmstead included in the 1992 transfer bordered Parcels D-F, and the portion of the farmstead included in the 2008 transfer bordered Parcels A-C.

¶5 Following a dispute in 2015, which arose after Ronald built a house on Parcel D, the Estate filed this lawsuit, seeking a declaration of interest in Parcels A-F. In response, Ronald filed an adverse possession counterclaim for all six of the parcels. Ronald argued that he adversely possessed Parcels A-E as a result of his parents' use of those parcels beginning in 1961. He further argued that he adversely possessed Parcel F as a result of his use of the parcel since 1992.

¶6 The matter proceeded to a bench trial, after which the circuit court made the following findings of fact and conclusions of law. A 2022 survey demonstrated that the farmstead was "bounded" by a "line fence" "on the north, west, and south sides." The line fence was made up mostly of barbed wire. The court found that the line fence was in place from 1961 until at least the time of the survey and that Parcels A-F were on the farmstead side of the fence. Accordingly, the court determined that the six parcels were protected by a "substantial enclosure."

¶7 Clifford and Marlene operated a dairy farm on the farmstead from 1961 until 1984. During the dairy farm's operations, Clifford and Marlene's "cattle grazed up to the line fence on all parts of the property." The circuit court found that in addition to the dairy farm operations, the entire property—the

farmstead and Parcels A-F—was used for "deer hunting, firewood cutting, four-wheeling, and other recreational purposes" beginning in 1961. Likewise, the court found that Ronald used the property transferred to him in 1992, including Parcel F, for "pasturing, deer hunting, … firewood cutting, … four-wheeling," and "other recreational purposes" from 1992 to at least 2012.

¶8      The circuit court determined that Clifford and Marlene "occupied the area of the [farmstead] and the total area of [Parcels A-E] up to the line fence for a continued and uninterrupted period from 1961 to 1984." Moreover, the court stated that the use of the property for dairy operations and other recreational activities, coupled with the line fence, "constituted open, notorious, and hostile possession of Parcels [A-E] for a continuous period of more than twenty years." "[G]iven the twenty-year uninterrupted possession of Parcels [A-E], with a substantial enclosure and an open and notorious and hostile possession, the title to [those parcels] vested in Clifford and Marlene … in 1981." Thus, "Clifford legitimately transferred ownership and title of" that portion of the farmstead, including Parcels A-E, to Ronald in 2008, and Ronald has "owned and occupied" those parcels since then.

¶9      Furthermore, the circuit court found that Ronald's use of the farmstead, including Parcel F, coupled with the presence of the line fence, "constitute[d] open, notorious, and hostile possession of" Parcel F from 1992 to 2012. Therefore, the court concluded that Parcel F vested in Ronald in 2012. Lastly, the court found that any oral agreement between Patrick and Clifford in the 1980s as to the existence of a boundary along the southern boundary of the farmstead violated the statute of frauds and did not create a legally binding agreement or boundary. The court then awarded title to Parcels A-F to Ronald. The Estate now appeals.

**DISCUSSION**

¶10   The Estate argues that the circuit court made both legal and factual errors in its ruling.  First, the Estate asserts that the court erred as a matter of law by concluding that the statute of frauds barred consideration of the purported 1980s oral agreement between Patrick and Clifford concerning the farmstead's southern boundary.  Second, the Estate claims that Ronald failed to prove his adverse possession claim and that the evidence actually shows that the Estate is the true owner of Parcels A-F.  And lastly, the Estate contends that the court erred by applying the "doctrine of acquiescence" when analyzing Ronald's adverse possession claim.

¶11   Generally, "[a]n action for the recovery or the possession of real estate and a defense or counterclaim based on title to real estate are barred by uninterrupted adverse possession of 20 years."  WIS. STAT. § 893.25(1) (applying to adverse possession not founded on a written instrument); *Wilcox v. Estate of Hines*, 2014 WI 60, ¶25, 355 Wis. 2d 1, 849 N.W.2d 280 (stating that § 893.25 "codifies the common law elements of continuous, open, notorious, exclusive, and hostile possession").  Real estate is possessed adversely "[o]nly if the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right," and "[o]nly to the extent that it is actually occupied."  Sec. 893.25(2)(a), (b).  In addition, the property must be "[p]rotected by a substantial enclosure" or "[u]sually cultivated or improved."  Sec. 893.25(2)(b)1.-2.

¶12   The burden of proof for an adverse possession claim is on the person asserting the claim.  *Wilcox*, 355 Wis. 2d 1, ¶20.  "The evidence of possession must be 'clear and positive and must be strictly construed against the claimant.'

The court must make all reasonable presumptions in favor of the true owner, including the presumption that actual possession is subordinate to the right of the true owner." *Id.* (citation omitted).

¶13 Review of an adverse possession claim presents a mixed question of fact and law. *Id.*, ¶15. We accept a circuit court's findings of fact unless they are clearly erroneous. *Id.* Whether those facts are sufficient to establish adverse possession is a question of law that we review de novo. *Id.*

## I. Subjective intent

¶14 The Estate first argues that the circuit court erred as a matter of law by concluding that the statute of frauds barred consideration of a purported 1987 oral agreement between Patrick and Clifford as to the farmstead's southern boundary. At trial, Patrick's daughter, Patricia, testified that her father and Clifford entered into an oral agreement in 1987 with regard to the proper boundary line between the farmstead and the Northeast of the Southeast property, which Patrick and Laura had recently purchased from Marlene. Patricia further stated that, as a result of the oral agreement, Patrick and Clifford placed two posts on the agreed-upon boundary line. In addition, Patricia testified her father had told her that he intended to build a fence between the posts but that such a fence was never built. The fence would have been north of the existing line fence, which the circuit court found "bounded" the southern boundary of the farmstead. As explained above, the court determined that any oral agreement between Patrick and Clifford as to the existence of a boundary violated the statute of frauds and did not create a legally binding agreement or boundary.

¶15 The Estate contends that the circuit court's ruling was in error because the oral agreement and the posts demonstrated Clifford's subjective intent

as to the boundary line in 1987. According to the Estate, *Wilcox* requires consideration of this intent, and the intent shown here "rebut[s] the hostility requirement of an adverse possession claim."

¶16 "[T]he plain meaning of 'claim of title,'" which "is the statutory equivalent of the common law 'hostility' requirement," "is that a possessor must subjectively intend to claim ownership of the disputed property." *Wilcox*, 355 Wis. 2d 1, ¶24; *see also* WIS. STAT. § 893.25(2). "Hostility" means that the adverse possessor claims exclusive right to the land. *Burkhardt v. Smith*, 17 Wis. 2d 132, 139-40, 115 N.W.2d 540 (1962). "Hostility," however, does not require "a deliberate, willful, unfriendly animus," and the law presumes the element of hostile intent "[i]f the elements of open, notorious, continuous and exclusive possession are satisfied." *Wilcox*, 355 Wis. 2d 1, ¶22. "Although the 'claim of title' requirement is presumed when all other elements of adverse possession are established, this presumption may be rebutted with evidence that a party never intended to assert ownership over the property." *Id.*, ¶24.

¶17 Regardless of whether the statute of frauds applied to the 1987 oral agreement, the adverse possession of Parcel F—the only parcel in dispute regarding the southern boundary of the farmstead—did not begin until 1992 when Ronald came into possession of that portion of the farmstead.[2] Clifford could not have claimed to adversely possess Parcel F in 1987 because he and Marlene owned the Northeast of the Southeast property until Marlene sold it after their divorce, and Ronald is not attempting to rely on the adverse possession of a

_____

[2] The Estate does not argue on appeal that the oral agreement created a legally binding boundary that could not be subject to adverse possession. Thus, we need not determine whether the statute of frauds applied to the oral agreement.

"predecessor in interest" via tacking.[3] *See id.*, ¶¶2-3, 21, 23-24. Accordingly, the relevant facts to apply to Ronald's adverse possession claim for Parcel F are those that occurred from 1992 to 2012. To the extent that subjective intent is relevant to Ronald's adverse possession claim of Parcel F, it is relevant only to demonstrate that Ronald, as the possessor, lacked the subjective intent to claim title to the parcel. *See id.*, ¶¶22, 30-31.

¶18     The Estate argues that Parcels A-F were labeled as such for the sake of litigation, but "[t]here is no evidence the parties or their predecessors in interest used this lettering system outside of litigation." The Estate contends that Parcel F "is just one part of a much larger piece of land and the evidence regarding the subjective intent of the parties applies to them all." However, the Estate fails to reconcile the fact that the oral agreement pertained only to the southern boundary of the farmstead—not to any of the other disputed areas encompassing Parcels A-E. Thus, the Estate has failed to demonstrate why Clifford's subjective intent in 1987 is relevant to whether Ronald adversely possessed Parcel F from 1992 to 2012.

## II. Sufficiency of the evidence

¶19     The Estate next argues that the circuit court erroneously determined that Ronald had proven adverse possession "by relying on facts that constitute sporadic trespass," which "is not sufficient to give notice to the true owner and cannot constitute a basis for a finding of adverse possession." In addition, the Estate asserts that the court overlooked the fact that the Hayden family used the

---

[3] "Tacking" permits an adverse possession claimant to "tack" his or her use of disputed property to that of a predecessor in interest in order to meet the twenty-year requirement. ***Wilcox v. Estate of Hines***, 2014 WI 60, ¶21, 355 Wis. 2d 1, 849 N.W.2d 280.

parcels "for the very same activities that form the basis of the adverse possession claim." As such, it appears that the Estate asserts that Ronald failed to meet his burden to prove by clear and positive evidence that his possession of the parcels was "in actual continued occupation" and "exclusive of any other right."[4] *See* WIS. STAT. § 893.25(2)(a).

### A. Actual and continued occupation

¶20    "Actual occupancy means the ordinary use of which the land is capable and such as an owner would make of it." **Burkhardt**, 17 Wis. 2d at 138. "Any actual visible means, which gives notice of exclusion from the property to the true owner or to the public and of the [adverse possessor's] domination over it, is sufficient." **Id.**; *see also* **Peter H. & Barbara J. Steuck Living Tr. v. Easley**, 2010 WI App 74, ¶22, 325 Wis. 2d 455, 785 N.W.2d 631 ("[A]lthough the use need be only the ordinary use an owner would make of it, the use must also be open, notorious, visible, exclusive, and hostile (as well as continuous).").

¶21    The circuit court's findings of fact related to the Pichlers' use of the parcels were extremely detailed and thorough, necessitating an equal amount of detail and thoroughness by the Estate to challenge those findings on appeal. The court found that the testimony of several of Ronald's witnesses was more credible

---

[4] The Estate also appears to argue that Ronald failed to meet his burden of proving that the parcels were "[u]sually cultivated or improved." *See* WIS. STAT. § 893.25(2)(b)2. However, the circuit court determined that Ronald had met his burden of proving that the parcels were "[p]rotected by a substantial enclosure." *See* § 893.25(2)(b)1. Ronald was not required to prove both a substantial enclosure and cultivation or improvement. *See* § 893.25(2)(b); **Wilcox**, 355 Wis. 2d 1, ¶19. Despite the fact that the Estate appears to suggest in the background section of its brief-in-chief, based on its witnesses' credible testimony, that the line fence was not a substantial enclosure, the Estate fails to develop any legal argument supporting this position, and we will not address that element further. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

than that of the Estate's witnesses. Based on those credibility determinations, the court found that the Pichlers openly used Parcels A-F for over 20 years, that the line fence was in place during that time, and that the line fence was a recognized boundary between the Estate's property and Ronald's property. With some exceptions discussed below, the Estate fails to argue how any of the court's findings are clearly erroneous, other than to ask us to, essentially, reweigh the evidence and the credibility of the witnesses at trial, something we cannot do. *See Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202 (stating that on appeal from a bench trial, "[w]e do not reweigh the evidence or reassess the witnesses' credibility").

¶22  That said, the Estate argues that the circuit court erroneously found that Patrick and Laura's son, Daniel, observed Clifford and Marlene pasturing their cattle on the Pichler side of the line fence. In particular, the court found that Daniel testified that Clifford and Marlene "had dairy cattle on their side of the fence." At trial, Daniel stated that he recalled observing cattle only on Clifford and Marlene's property by the highway, not by the line fence. However, he conceded that he did not walk the lince fence "very often."

¶23  However, even if we did not consider the circuit court's finding regarding Daniel's observations of cattle along the line fence, the court nonetheless credited the testimony of several of Ronald's other witnesses who stated there were cattle in those areas during the dairy farm's operations. For example, Marlene testified that she and Clifford pastured cattle up to the line fence on the parcels and also engaged in other recreational activities on those parcels. In other words, the court's overall findings surrounding the activities on the parcels are supported by the record and not clearly erroneous.

¶24 Furthermore, we conclude that the types of activities found to have occurred on the parcels were sufficient to constitute actual occupancy because they were the type of ordinary use the land was capable of, and the Haydens would have been on notice that the parcels were being occupied and used by their neighbors. As explained by the Estate on appeal, the topography of the parcels is a mix of wooded and nonwooded farmland. Thus, one would not expect an ordinary use of this land to extend beyond recreational and farming purposes. *See Steuck Living Tr.*, 325 Wis. 2d 455, ¶14 ("The size and nature of the disputed area are relevant in deciding if the use is sufficient to apprise the true owner of an adverse claim."). Importantly, the uses occurred behind the line fence, which enclosed the farmstead and thus gave the Haydens notice of Clifford and Marlene's—or, with respect to Parcel F, Ronald's—dominion over the land to the exclusion of the Haydens.

¶25 The Estate has failed to cite any case law suggesting that recreational and farm use of wooded and nonwooded farmland is insufficient, as a matter of law, to meet the actual occupancy element. The uses in this case went beyond mere "sporadic trespass," particularly given the substantial enclosure between the Estate's land and Parcels A-F. *See Northwoods Dev. Corp. v. Klement*, 24 Wis. 2d 387, 393, 129 N.W.2d 121 (1964) ("Pasturing cattle regularly in an enclosed pasture by a person conducting a dairy farm would seem to us to be of a nature sufficiently open and notorious to afford the basis for adverse possession."); *Keller v. Morfeld*, 222 Wis. 2d 413, 422, 588 N.W.2d 79 (Ct. App. 1998) ("Any actual visible means[] which gives notice of exclusion from the property to the [record] owner or to the public and of the [adverse possessor's] domination over it, is sufficient." (first and third alterations in original; citation omitted)).

*B. Exclusive use*

¶26    As to exclusive use, the Estate argues that "[b]oth parties testified they used the disputed area for building fences, pasturing cattle, and hunting." The Estate asserts that because the "frequency and scope" of these uses by both parties "is unknown," Ronald failed to overcome the presumption that actual possession is subordinate to the right of the true owner.

¶27    Again, we disagree.  Imperatively, where there are competing facts about whether an adverse possessor had exclusive control, "the finding is one for the fact finder, not for a[n appellate] court as a matter of law."  ***Kruckenberg v. Krukar***, 2017 WI App 70, ¶8, 378 Wis. 2d 314, 903 N.W.2d 164.  This notion is particularly true where, as here, there were many factual disputes at trial regarding the historical uses of the parcels, and the circuit court made credibility determinations to resolve those disputes.  The court expressly credited many of Ronald's trial witnesses in reaching its findings, including its findings that the line fence surrounded Parcels A-F during the relevant time periods and that the Pichlers had exclusive control over the parcels.  *See* WIS. STAT. § 805.17(2) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [circuit] court to judge the credibility of the witnesses.").  Given these findings and credibility determinations, we cannot conclude that the evidence was insufficient to establish the Pichlers' exclusive control over the parcels, particularly where the parcels were protected by a substantial enclosure.

¶28    To the extent that the Haydens used the parcels for hunting or other recreational purposes, this court has explained that the "true owner's casual reentry upon property does not defeat the continuity or exclusivity of an adverse

claimant's possession. The true owner's reentry should be a substantial and material interruption and a notorious reentry for the purpose of dispossessing the adverse occupant." *Kruckenberg*, 378 Wis. 2d 314, ¶8 (citation omitted). The Estate has cited no facts in the record suggesting that the Haydens' use of the parcels caused substantial or material interruptions that would overcome the fact that the fence was built enclosing parcels A-F on the farmstead's side. *See Northwoods Dev. Corp.*, 24 Wis. 2d at 393; *Keller*, 222 Wis. 2d at 422. In fact, the circuit court credited Marlene's testimony that there was never a dispute during her and Clifford's ownership of the farmstead "as to the fact of the line fence being the boundary between the Pichlers and the Haydens." It follows, then, based on the totality of the court's findings, that Clifford and Marlene may have, at most, permitted the Haydens to casually use the parcels, but the Haydens did not reenter the parcels in a substantial, material, or notorious manner. *See Kruckenberg*, 378 Wis. 2d 314, ¶8.

¶29 In short, based on the circuit court's findings and credibility determinations, Ronald presented clear and positive evidence to support his adverse possession claim, which was sufficient to overcome the presumption favoring the Estate as the true owner of the parcels.

**III. Doctrine of acquiescence**

¶30 Finally, the Estate contends that the circuit court erred as a matter of law by applying the "doctrine of acquiescence" to Parcels B-E. The Estate argues that it is unclear in which context the court applied the doctrine, *see Northrop v. Opperman*, 2011 WI 5, ¶¶31-35, 331 Wis. 2d 287, 795 N.W.2d 719 (stating that the term "acquiescence" in Wisconsin case law is used both in the context of locating a boundary and separately in the context of adverse possession), and that

13

the facts presented at the bench trial in this case did not support applying the doctrine in either context.

¶31    "A party who expressly disclaims ownership of property and seeks permission for its use is not 'claiming title' to the property." *Wilcox*, 355 Wis. 2d 1, ¶24.  The doctrine of acquiescence, in the adverse possession context, allows an adverse possessor to contend that, by tolerating his or her use, the true owner of the property was acquiescing in the use rather than permitting it.  *See* WIS JI—CIVIL 8060 (2025).  Acquiescence can substitute for the hostile intent element of adverse possession.  *See Northrop*, 331 Wis. 2d 287, ¶38 n.23.  The visible nature of an activity—such as farming up to a fence line for twenty years without objection from the true owner—"together with the commonly understood purpose of a fence to define property lines forms the basis for the reasonable inference that the titleholder's lack of objection constitutes acquiescence to that boundary line." *Steuck Living Tr.*, 325 Wis. 2d 455, ¶38.

¶32    In its ruling following the bench trial, the circuit court cited *Steuck Living Trust* for the proposition that "[a]cquiescence is simply another form of adverse possession" that eliminates "the hostile intent requirement."  During its recap of the testimony from the trial, the court recounted that "[t]estimony was provided that the Haydens had built" the line fence "on the west side of" the farmstead's boundary, but "the Pichlers dispute that."  The court stated that even if the Haydens had built the line fence on the west side of the farmstead boundary— i.e., if the Haydens "permitted" Clifford and Marlene to use those parcels—"the fact that the Pichlers pastured the cattle up to the fence and the fact that … four-wheeling took place right up to the fence, clearly indicates that the Haydens acquiesced with [the Pichlers'] use" of Parcels B-E, which border the west side of the farmstead.

¶33    When viewed in the context of the circuit court's ruling, it is clear that the court applied the doctrine of acquiescence to Parcels B-E in the adverse possession context.  *See* ***Northrop***, 331 Wis. 2d 287, ¶¶31-35.  According to the court, the doctrine supported Ronald's adverse possession claim to Parcels B-E even if the Haydens had built the line fence, which the Pichlers had disputed. Regardless, the court separately concluded that Ronald had adversely possessed Parcels A-E "given the twenty-year uninterrupted possession" of those parcels by Clifford and Marlene "with a substantial enclosure and an open and notorious and hostile possession."

¶34    The Estate contends that "there was no evidence presented by either party" to support the acquiescence theory of adverse possession for Parcels B-E. According to the Estate, "the testimony at trial was that each [party] thought the areas in dispute were their own."  We disagree.  As outlined previously in this opinion, evidence was presented showing that the line fence was in place in 1961 and remained in the same place until the current dispute.  The fact that Clifford and Marlene engaged in activities up to the west side of the line fence for a period of twenty-plus years forms the basis for the reasonable inference that the Haydens' lack of objection constitutes acquiescence to that boundary line.  *See* ***Steuck Living Tr.***, 325 Wis. 2d 455, ¶38.  Accordingly, even if Ronald failed to prove the claim of title element for Parcels B-E, the circuit court was correct in determining that its factual findings supported applying the doctrine of acquiescence to those parcels.

¶35    In reply, the Estate argues that ***Chandelle Enterprises, LLC v. XLNT Dairy Farm, Inc.***, 2005 WI App 110, 282 Wis. 2d 806, 699 N.W.2d 241, supports a conclusion that the doctrine of acquiescence cannot apply in this case. However, in ***Chandelle Enterprises***, the party seeking to enforce a fence as the

boundary line abandoned its claim to adverse possession on appeal. *Id.*, ¶5 n.5. Instead, that party argued that the circuit court's equitable powers permitted it to declare the line fence as the boundary line. *Id.*, ¶6. Therefore, on appeal, this court considered the doctrine of acquiescence in the general context of a boundary dispute, not the specific adverse possession context, and concluded the doctrine could not apply to a dispute where the deed descriptions were unambiguous. *See id.*, ¶¶7-13. Adverse possession—including the doctrine of acquiescence as applied in that context—can apply even if deed descriptions are unambiguous. For this reason, we do not find *Chandelle Enterprises* relevant to the case at hand.

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.