# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP1869 |
| COMPLETE TITLE: | Richard S. Wilcox and Susan K. Wilcox,<br>            Plaintiffs-Appellants,<br>       v.<br>Estate of Ralph Hines, Estate of William J. Newman and<br>Lake Delton Holdings, LLC,<br>            Defendants-Respondents-Petitioners,<br>Chicago Title Insurance Company,<br>            Defendant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
348 Wis. 2d 124, 831 N.W.2d 791
(Ct. App. 2013 – Published)
PDC No: 2013 WI App 68

| | |
|---|---|
| OPINION FILED: | July 11, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 19, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Sauk |
| JUDGE: | James Evenson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-respondents-petitioners, there were briefs by *James E. Bartzen*, *Richard L. Schmidt*, and *Boardman & Clark LLP*, Madison, and oral argument by *James E. Bartzen*.

For the plaintiff-appellants, there was a brief by *Edward A. Corcoran* and *Neider & Boucher, S.C.*, Madison, and oral argument by *Edward A. Corcoran*.

An amicus curiae brief was filed by *Thomas D. Larson*, Madison, on behalf of the Wisconsin Realtors Association.

2014 WI 60

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP1869
(L.C. No. 2011CV845)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Richard S. Wilcox and Susan K. Wilcox,**

      **Plaintiffs-Appellants,**

  **v.**

**Estate of Ralph Hines, Estate of William J. Newman and Lake Delton Holdings, LLC,**

      **Defendants-Respondents-Petitioners,**

**Chicago Title Insurance Company,**

      **Defendant.**

**FILED**

**JUL 11, 2014**

Diane M. Fremgen
Clerk of Supreme Court

---

*REVIEW* of a decision of the Court of Appeals. *Reversed.*

¶1 MICHAEL J. GABLEMAN, J.    This is a review of a published decision of the court of appeals[1] reversing a decision and order of the Sauk County Circuit Court[2] dismissing the

---

[1] Wilcox v. Estate of Hines, 2013 WI App 68, 348 Wis. 2d 124, 831 N.W.2d 791.

[2] The Honorable James Evenson presiding.

adverse possession claim brought by the respondents, Richard and Susan Wilcox.

¶2    This case involves an action for adverse possession brought by the respondents, Richard and Susan Wilcox, for the purpose of gaining title to a strip of land separating their property from Lake Delton.  The question presented is whether the Wilcoxes can establish that they adversely possessed the disputed property when their predecessors in interest, the Somas, expressly disclaimed ownership of it and sought permission to use the property from an entity that the Somas mistakenly believed was its true owner.  The Wilcoxes argue it is irrelevant whether the Somas subjectively intended to claim ownership of the property, so long as their use of the property was sufficient to put the true owner on notice of occupation.  In contrast, the titleholders[3] maintain that a party's subjective intent[4] to claim ownership is relevant to whether "claim of title"[5] has been established under Wis. Stat. § 893.25 (2011-12).[6]  The titleholders assert that the fact the Somas expressly

_____

[3] For the purposes of clarity, we refer to the Estate of Ralph Hines, the Estate of William J. Newman, Lake Delton Holdings, LLC, and the Chicago Title Insurance Company collectively as "the titleholders."

[4] In referring to a party's subjective intent, we mean the actual state of a person's mind, as opposed to the objective appearance of the party's intentions.

[5] As discussed below, the "claim of title" requirement in Wis. Stat. § 893.25 is equivalent to the common law "hostility" element of adverse possession.

[6] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

disclaimed ownership of the lakefront strip and requested permission to use it from an entity they mistakenly believed was its true owner demonstrates they did not intend to claim title to the property.

¶3  For the reasons that follow, we agree with the titleholders and hold that evidence regarding a possessor's subjective intent to claim title may be relevant in an adverse possession claim to rebut the presumption of hostility that arises when all other elements of adverse possession are satisfied.  Because the circuit court properly considered the Somas' subjective intent and concluded that the Wilcoxes failed to establish adverse possession for the requisite statutory period, we affirm the judgment of the circuit court, and we need not remand for further proceedings.  Accordingly, we reverse the decision of the court of appeals.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶4  In 2002, Richard and Susan Wilcox ("the Wilcoxes") purchased a parcel of property ("the Wilcox property") from Ronald and Mary Soma ("the Somas") near Lake Delton in Sauk County.  A 25-foot-wide strip of land ("the lakefront strip") runs between the eastern border of the Wilcox property and Lake Delton.  It is this lakefront strip that is the subject of dispute in this case, and a brief account of its ownership history is necessary to understand the parties' arguments.

¶5  At the time the Wilcoxes filed their complaint in this case, the southeast portion of the lakefront strip was owned by The Estate of William Newman ("Newman").  Newman originally

3

created Lake Delton in 1927 by constructing a dam on Dell Creek, and at that time he owned the entire lakefront strip, as well as what is now the Wilcox property.

¶6    In 1933, Newman transferred ownership of the northeast portion of the lakefront strip and a portion of the Wilcox property to Ralph Hines ("Hines"), and transferred the remainder of the Wilcox property to Hines in 1935.  Newman also granted Hines the right to foot traffic across the southeast portion of the lakefront strip.  In 1935, Hines sold the Wilcox property to Henry C. Titus ("Titus") but retained ownership of the northeast portion of the lakefront strip.  Hines also granted Titus the right to foot traffic across the entire lakefront strip.

¶7    In 1963, the Somas purchased the Wilcox property from Titus and, as part of the sale, were granted the right to foot traffic across the entire lakefront strip.  At this time, ownership of the lakefront strip remained with Hines and Newman, and Titus explained to the Somas that the Wilcox property did not include the lakefront strip.  The Somas, however, never knew who actually owned the lakefront strip.  Following the deaths of both Hines and Newman, ownership of the lakefront strip was ultimately transferred to the Estate of Ralph Hines and the Estate of William Newman.  These estates retained ownership of

the lakefront strip at the time the complaint in this case was filed.[7]

¶8 The Somas owned the Wilcox property for nearly 40 years. During this time, the Somas made numerous improvements to the lakefront strip, while understanding that they did not own that land. For instance, the Somas installed and removed a pier on the lakefront strip every year that they owned the Wilcox property. They also cleared out undergrowth on the lakefront strip, added rocks, planted trees and flowers, repaired a cement wall, installed riprap[8] along the shoreline, and maintained the lawn. In addition, the Somas put up a "No Trespassing" sign and regularly told trespassers that they were on private property and instructed them to leave. The Somas never asked permission from either the Newman or Hines Estates

---

[7] During the course of litigation, Lake Delton Holdings, LLC, an enterprise owned by the law firm representing the Hines and Newman Estates in this case, acquired quitclaim deeds to both portions of the lakefront strip. Following acquisition of the deeds, Lake Delton Holdings moved to intervene in place of the Estates. The Wilcoxes objected, arguing that Lake Delton Holdings had unclean hands because it "attempted to acquire the property interest in order to advance a defense on behalf of First American Title Insurance in a dispute with the Wilcoxes on an adjoining parcel that had already generated three appeals." The circuit court denied the motion to intervene but allowed Lake Delton Holdings to continue as an interested party. Lake Delton Holdings' motivation for acquiring deeds to the lakefront strip is irrelevant to whether the Wilcoxes have established adverse possession.

[8] "Riprap" is defined as "[l]oose stone used to form a foundation for a breakwater or other structure; a structure made of this." Shorter Oxford English Dictionary 2590 (6th ed. 2007).

to make these alterations to the lakefront strip. However, they did ask and receive permission from John Dixon ("Dixon"), the manager of the Wisconsin Ducks ("the Ducks"), a company that provides boat tours of Lake Delton and Dell Creek. The Somas did so because they mistakenly believed that the lakefront strip was owned by the Ducks.

¶9 In 1982, the Somas granted the Ducks an easement across their property to bring trucks and equipment to the lakefront strip. The Ducks cleared out trees and undergrowth and placed rocks on the lakefront strip. The Somas never objected to these improvements because they believed the lakefront strip belonged to the Ducks. After the Ducks were finished, the Somas wished to make certain improvements to the lakefront strip. Before doing so, they sought and received permission from Dixon to rearrange the rocks, place peat and grass seed on the lakefront strip, and put up a fence with a gate and an additional "No Trespassing" sign.

¶10 The Wilcoxes purchased the Somas' property in 2002. Prior to the purchase, the Somas informed the Wilcoxes that the lakefront strip was not part of the sale, but that the Wilcoxes would have a right of foot traffic across it.[9] Nevertheless, the Wilcoxes maintained and developed the lakefront strip in the

---

[9] In addition, the Surveyor's Certificate of the purchased property states that the lakefront strip is not included in the parcel: "Said parcel does not include that land lying between said line being 25 feet, more or less, from the water's edge of Lake Delton and the water line of Lake Delton . . . ."

years following their purchase, adding improvements such as piers, a patio, flowers, trees, a fire pit, and steps.

¶11 On August 26, 2011, the Wilcoxes brought a claim for title by adverse possession under Wis. Stat. § 893.25 against the owners of the lakefront strip, the Estate of Ralph Hines and the Estate of William Newman, in the Sauk County Circuit Court.[10] The circuit court conducted a bench trial on May 10, 2012. In its oral ruling, the circuit court explained that adverse possession requires possession that is "open, notorious, visible, exclusive, hostile, and continuous . . . ." The circuit court found that the Wilcoxes, in conjunction with their predecessors in interest,[11] had met their burden of proof on the open and visible elements of adverse possession. However, the circuit court determined that they had failed to establish the elements of exclusive, hostile, notorious, and continuous possession. The circuit court dismissed the Wilcoxes' adverse possession claim, noting that 1) the Somas had specifically disclaimed ownership of the lakefront strip; and 2) the Somas

---

[10] The Wilcoxes also brought a claim for reformation of title, and the titleholders raised a counterclaim for trespass against the Wilcoxes. Both claims were dismissed by the circuit court and not raised before the court of appeals. Accordingly, we do not address them.

[11] The Wilcoxes cannot, by themselves, demonstrate adverse possession for the requisite statutory period. This is so because the Wilcoxes' use of the lakefront strip began in 2002, and consequently, they had only occupied the disputed property for less than ten of the statutorily required 20 years at the time they brought suit. The Wilcoxes must therefore "tack" their period of possession onto that of the Somas in order to satisfy the statutory period in Wis. Stat. § 893.25(1).

7

sought and received permission to make improvements to the lakefront strip.  A final order reflecting this ruling was issued on May 22, 2012.

¶12 The court of appeals reversed the decision of the circuit court.  Wilcox v. Estate of Hines, 2013 WI App 68, 348 Wis. 2d 124, 831 N.W.2d 791.  The court of appeals first acknowledged "what might appear to be an inconsistency in adverse possession case law."  Id., ¶2.  Specifically, the court observed that while the adverse possession statute, Wis. Stat. § 893.25(2)(a), requires "occupation under claim of title," several cases appear to hold that the subjective intent of a possessor——that is, whether the possessor intended to claim title——is an irrelevant factor in determining the merits of an adverse possession claim.  Id.  After noting this apparent tension between the language of Wis. Stat. § 893.25 and our precedent, the court of appeals determined that reviewing courts should consider "the appearance that a possessor's use would give to the true owner" and not the "actual subjective intent" of a party.  Id., ¶15.  In other words, the court of appeals concluded that it is "a possessor's actions, not a possessor's belief" that matters when considering the hostile nature of the occupation.  Id., ¶16.  The court of appeals reasoned that this distinction reconciles various cases that appear "to declare, in one breath, that a possessor must actually intend to claim an exclusive right to possess property, and then, in the next breath, assert that the subjective intent of the possessor is irrelevant. . . ."  Id., ¶19.  Applying this rule, the court of

appeals held that evidence of permission to use the property from a non-owner and a party's express declarations of non-ownership should not be considered.

¶13 The court of appeals recognized an exception to this rule: a party's permissive use of property is relevant in cases where the permission is granted by the true owner of the property.  Id., ¶21.  The court of appeals explained this exception is warranted because when an owner has granted a party permission to use property, a party's use in accordance with that permission would not appear hostile to the owner.  Id.  In this case, however, the Somas' permission to use the lakefront strip came from a non-owner and was therefore irrelevant.  Id.  Consequently, the court of appeals held that the Wilcoxes satisfied the requirements of adverse possession.  Id., ¶24.

¶14 The titleholders petitioned this court for review, which we granted on September 17, 2013.  We now reverse.

## II.  STANDARD OF REVIEW

¶15 Review of an adverse possession claim presents a mixed question of fact and law.  Perpignani v. Vonasek, 139 Wis. 2d 695, 728, 408 N.W.2d 1 (1987).  We accept the circuit court's findings of fact unless they are clearly erroneous.  Peter H. & Barbara J. Steuck Living Trust v. Easley, 2010 WI App 74, ¶11, 325 Wis. 2d 455, 785 N.W.2d 631.  However, whether these facts are sufficient to establish adverse possession is a

9

question of law that this court reviews de novo. Id.; Perpignani, 139 Wis. 2d at 728.[12]

¶16 This case also involves an interpretation of Wisconsin's adverse possession statute, Wis. Stat. § 893.25. Statutory interpretation is a question of law that this court reviews de novo. Crown Castle USA, Inc. v. Orion Constr. Grp., LLC, 2012 WI 29, ¶12, 339 Wis. 2d 252, 811 N.W.2d 332.

## III. DISCUSSION

¶17 The question before us is whether the Somas' subjective intent not to claim title to the lakefront strip, as demonstrated by their express statements and their use of the property with the permission of a non-owner, is relevant to the Wilcoxes' adverse possession claim.

¶18 We begin in Part A by reviewing the basic requirements to establish ownership by adverse possession under both the common law and Wisconsin's adverse possession statute, Wis. Stat. § 893.25. In Part B, we address whether a court may consider evidence relating to a party's subjective intent in determining whether the claim of title requirement in Wis. Stat. § 893.25, or its common-law counterpart, the hostility

---

[12] The parties dispute how the standard of review applies in this case. The titleholders maintain that the court of appeals improperly reviewed the evidentiary issues in this case de novo, when the circuit court's factual findings should be upheld unless clearly erroneous. However, the Wilcoxes point out, and we agree, that this case does not center solely on the review of the circuit court's findings of fact. Instead, we must determine whether the circuit court properly considered evidence related to the Somas' subjective state of mind, which is a question of law that this court reviews de novo.

10

requirement, has been satisfied. We conclude that evidence regarding a party's subjective intent to claim title can be relevant to rebut the presumption of hostility that arises when all other elements of an adverse possession claim are met. In Part C, we apply this conclusion to the facts of this case and determine that the Somas' statements disclaiming ownership and their use of the property with permission from a non-owner provided a sufficient basis for the circuit court to conclude that the Wilcoxes had failed to establish adverse possession of the lakefront strip.

### A. The Essential Elements of Adverse Possession

¶19 Adverse possession is a legal action that enables a party to obtain valid title of another's property by operation of law. Wisconsin Stat. § 893.25(1) bars an action for recovery or possession of real estate if it has been adversely possessed for a minimum of 20 years. Property is adversely possessed only if the possessor is in "actual continued occupation under claim of title, exclusive of any other right," § 893.25(2)(a), and the property is "protected by a substantial enclosure" or "usually cultivated and improved," § 893.25(2)(b).

¶20 Wisconsin Stat. § 893.25 codifies the common law elements of adverse possession, which require physical possession that is "hostile, open and notorious, exclusive and continuous . . . ." Leciejewski v. Sedlak, 116 Wis. 2d 629, 636, 342 N.W.2d 734 (1984); see also Pollnow v. State Dep't of Natural Res., 88 Wis. 2d 350, 356, 276 N.W.2d 738 (1979) ("[T]he [adverse possession] statute carries over the common law

11

definition of adverse possession"). In an adverse possession claim, the burden of proof is on the person asserting the claim. Allie v. Russo, 88 Wis. 2d 334, 343, 276 N.W.2d 730 (1979). The evidence of possession must be "clear and positive and must be strictly construed against the claimant." Id. The court must make all reasonable presumptions in favor of the true owner, including the presumption that actual possession is subordinate to the right of the true owner. Zeisler Corp. v. Page, 24 Wis. 2d 190, 198, 128 N.W.2d 414 (1964) (quoting Illinois Steel Co. v. Budzisz, 106 Wis. 499, 514, 81 N.W. 1027 (1900)).

¶21 In order to demonstrate continuous possession for the requisite statutory period, a possessor may "tack" his time of possession to that of his predecessor in interest. Perpignani, 139 Wis. 2d at 724-25. However, "in order to benefit from tacking, the adverse claimant must be shown to be in privity with any prior adverse possessor," id. at 725, and the prior possession must be actually adverse. Id. at 727.

¶22 The parties dispute what is necessary to satisfy the "claim of title" requirement in Wis. Stat. § 893.25, which corresponds to the common law "hostility" element.[13] Within the

---

[13] We agree with the parties and the court of appeals that the common law "hostility" requirement for adverse possession is equivalent to the "claim of title" requirement in Wis. Stat. § 893.25(2)(a). See, e.g., Kimball v. Baker Land & Title Co., 152 Wis. 441, 448, 140 N.W. 47 (1913) (adverse possession statute "requir[es] allegation of hostile title, to allege facts from which the hostile claim of title or interest is raised as a necessary or reasonable inference"); Illinois Steel Co. v. Bilot, 109 Wis. 418, 446, 85 N.W. 402 (1901) ("If the claimant 'raises his flag and keeps it up,' so to speak, sufficiently to attract the attention of the true owner to the situation . . . as a hostile claim of title, knowledge of such owner may be presumed as a fact . . . ."); see also Jeffrey Evans Stake, The Uneasy Case for Adverse Possession, 89 Geo. L.J. 2419, 2426 (2001) (the hostility element "goes by a variety of names, including 'adverse,' 'hostile,' 'under claim of title,' 'under claim of right,' and 'hostile and under claim of right.'"); Richard R.

context of adverse possession, "'[h]ostility' means only one in possession [of the disputed property] claims exclusive right thereto and actual possession prevents the assumption of possession in the true owner." Burkhardt v. Smith, 17 Wis. 2d 132, 139-40, 115 N.W.2d 540 (1962). "'Hostile intent' does not mean a deliberate, wilful, unfriendly animus. If the elements of open, notorious, continuous and exclusive possession are satisfied, the law presumes the element of hostile intent." Id. at 139. In other words, when all other elements of adverse possession are satisfied, a hostile intent is presumed. However, as explained below, this presumption may be rebutted by evidence demonstrating that a possessor lacked the subjective intent to claim title to the property.

B. A Presumption of Hostility is Rebuttable with Evidence
of a Possessor's Subjective Intent

¶23 The facts in this case raise a novel issue in our adverse possession jurisprudence: whether an adverse claimant can establish the elements of adverse possession when evidence demonstrates the party's predecessor in interest lacked the subjective intent to claim title to the property. Specifically, the circuit court considered evidence that the Wilcoxes' predecessors in interest, the Somas, expressly disclaimed ownership of the lakefront strip and sought and received

---

Powell, 16 Powell on Real Property § 91.05[4], at 91-31 (Michael Allan Wolf ed. 2000) ("In essence, to require adverse possession under a claim of right is the same as requiring hostility, in that both terms simply indicate that the claimant is holding the property with an intent that is adverse to the interests of the true owner").

permission to use the property from an entity they mistakenly believed was its true owner.  The titleholders assert that evidence the Somas never intended to gain possession of the lakefront strip was properly considered by the circuit court in reaching its conclusion that the Wilcoxes failed to satisfy the hostility element of adverse possession.  In contrast, the Wilcoxes argue the circuit court erred in considering the intent of the Somas, because such an inquiry is irrelevant so long as the Somas' use of the property was sufficient to put the true owner on notice.

¶24 We agree with the titleholders and conclude that, under Wis. Stat. § 893.25 and our precedent, evidence relating to a party's subjective intent to claim title is relevant to rebut a presumption of hostility in an adverse possession claim. The "claim of title" requirement in Wis. Stat. § 893.25 is the statutory equivalent of the common law "hostility" requirement. As discussed below, the plain meaning of "claim of title" is that a possessor must subjectively intend to claim ownership of the disputed property.  Although the "claim of title" requirement is presumed when all other elements of adverse possession are established, this presumption may be rebutted with evidence that a party never intended to assert ownership over the property.  A party who expressly disclaims ownership of property and seeks permission for its use is not "claiming title" to the property.  Therefore, express declarations of non-ownership and evidence of permissive use are properly considered by a circuit court in determining whether the "claim of title"

requirement in Wis. Stat. § 893.25 has been satisfied. To hold otherwise would render this essential element of adverse possession a nullity.

¶25 This case is a dispute about whether the Wilcoxes have met the statutory requirements of adverse possession under Wis. Stat. § 893.25, which codifies the common law elements of continuous, open, notorious, exclusive, and hostile possession. In analyzing the requirements of a statute, we "begin[] with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). The plain meaning of statutory language is generally the "'common,' 'ordinary,' 'natural,' 'normal,' or dictionary definition[]" of a term. Id., ¶41 (citation omitted).

¶26 Wisconsin Stat. § 893.25(2)(a) provides that property is adversely possessed "[o]nly if the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right." (emphasis added). The plain meaning of "claim of title" is that the possessor intends to claim ownership of

15

the disputed property.[14]   See 10 Thompson on Real Property § 87.11, at 159 (David A. Thomas, ed., 3d ed. 2013) ("Claim of title is where one enters and occupies land with the intent to hold it as one's own against the world . . . .").[15]   Black's Law Dictionary defines "claim of title" as being synonymous with "claim of ownership."   Black's Law Dictionary 283 (9th ed. 2009).   "Claim of ownership" is defined as "[t]he possession of a piece of property with the intention of claiming it in hostility to the true owner," as well as "[a] party's manifest

---

[14] The same is true for the common law "hostility" requirement.   See Burkhardt v. Smith, 17 Wis. 2d 132, 139-40, 115 N.W.2d 540 (1962) ("'Hostility' means only one in possession claims exclusive right thereto and actual possession prevents the assumption of possession in the true owner.") (emphasis added); see also Stake, supra note 13, at 2428 (discussing the hostility element and explaining, "[t]o be a possessor, [the claimant] must have had a true owner's intent to use the land, develop the land, or exclude others from the land"); 10 Thompson on Real Property § 87.11, at 156-7 (David A. Thomas, ed., 3d ed. 2013) ("[The] intention to claim as owner is said to be the very essence of title by adverse possession, and to say that the possession must be hostile is equivalent to saying that it must be under a claim of right"); Powell, supra note 13, at 91-21 ("Hostile possession can be understood as possession that is opposed and antagonistic to all other claims, and that conveys a clear message that the possessor intends to possess the land as his or her own").

[15] Our interpretation of the "claim of title" element as requiring an actual subjective intent to claim ownership of property is in keeping with the historic purpose of the common law hostility requirement, which was to distinguish adverse claimants from mere trespassers or squatters.   See Ewing's Lessee v. Burnet, 36 U.S. 41, 52 (1837) (explaining that the difference between ouster and trespass turns on "the intention with which it is done; if made under claim and color of right, it is an ouster, otherwise, it is a mere trespass . . . .").

16

intention to take over land, regardless of title or right." Id.[16]

¶27 Although the "claim of title" requirement in Wis. Stat. § 893.25 is presumed when all other elements of adverse possession are established, this presumption must be rebuttable for the requirement to have meaning.[17] As we explained in Ovig v. Morrison,

> [U]pon unexplained, exclusive, continuous occupancy of land under a chain of title, by one not the true owner, for the statutory period . . . there arises . . . the presumption that, during all such period, the possession had all the requisites of an adverse holding, subject to be rebutted by proof that it was in fact subordinate to the right of the true owner, but conclusive in the absence of such rebuttal.

Ovig v. Morrison, 142 Wis. 243, 249-50, 125 N.W. 449 (1910) (emphasis added). If the requirement that the disputed land be occupied "under claim of title" were irrebuttable, its presence in the statute would be meaningless. "Statutory language is read where possible to give reasonable effect to every word, in

---

[16] Similarly, the American Heritage Dictionary defines "claim" as "to demand, ask for, or take as one's own or one's due. . . ." and "lay claim to" is defined as "[t]o assert one's right to or ownership of." American Heritage Dictionary of the English Language 340-41 (5th ed. 2011).

[17] We note that instances where evidence exists to refute the "claim of title" requirement will necessarily be rare, as is underscored by the fact that this is the first time we have been asked to address the issue. In all adverse possession cases, the adverse claimant intends to possess the disputed property; indeed, that is the purpose of raising an adverse possession claim. However, under the uncommon facts presented to us in this case, it is clear the Somas did not occupy the lakefront strip "under claim of title." Wis. Stat. § 893.25(2)(a).

17

order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46. In other words, evidence demonstrating that a party's possession was not "under claim of title" must be admissible, as it is directly relevant to whether an essential element of adverse possession has been satisfied. To conclude otherwise would read the "claim of title" requirement out of the adverse possession statute entirely. Likewise, to hold that the claim of title presumption is irrebuttable would also be contrary to the general rule that evidence in an adverse possession case must be "clear and positive and must be strictly construed against the claimant." Allie, 88 Wis. 2d at 343.

¶28 The Wilcoxes argue that this reading of Wis. Stat. § 893.25 improperly ignores applicable case law instructing courts to consider only the observable physical characteristics of possession, without inquiring into a party's subjective state of mind. Specifically, the Wilcoxes rely on our decisions in Allie and Ovig, where we held that the "sole test" for adverse possession is "the physical characteristics of possession . . . ." Ovig, 142 Wis. at 248, and that "[t]he subjective intent of either of the parties is irrelevant to a determination of a claim of adverse possession." Allie, 88 Wis. 2d at 347. Similarly, the court of appeals held that "claim of title" is demonstrated through "the appearance that a possessor's use would give to the true owner" and "refers to a

18

possessor's actions, not a possessor's belief."   <u>Wilcox</u>, 348 Wis. 2d 124, ¶¶15-16.[18]

¶29 While we acknowledge, as the court of appeals did, that case law does not always discuss the issue of subjective intent "with optimal clarity,"[19] we disagree with the Wilcoxes' contention that <u>Ovig</u> and <u>Allie</u> stand for the blanket proposition that subjective intent is <u>never</u> relevant in an adverse possession claim.  <u>See</u> <u>Thompson</u>, supra, § 87.11, at 156  ("No matter how exclusive and hostile the possession may be in appearance, it cannot be adverse unless accompanied by an intent on the part of the occupant to make it so . . . .").

¶30 In most adverse possession cases, a court's inquiry is primarily focused on the observable physical characteristics of the claimant's occupation, including whether the elements of

---

[18] The court of appeals reasoned that the "sole exception" to this general rule is if permission is sought from a property's true owner.  However, knowledge of the identity of the true owner is not a required element of adverse possession, and the fact that the Somas were mistaken about who actually owned the lakefront strip is not decisive in this case.  Even if the court of appeals was correct, it failed to accurately apply its rule to the facts of this case.  It was established at trial that the Wilcoxes and the Somas both had permission to use the lakefront strip——a right to foot traffic——that was originally granted by the property's true owners.

[19] <u>Wilcox</u>, 348 Wis. 2d 124, ¶16.  In contrast to the language relied upon by the Wilcoxes in <u>Allie</u> and <u>Ovig</u>, we have also explicitly stated in other cases that a "hostile intent" is necessary to establish adverse possession.  <u>See, e.g.</u>, <u>Stone Bank Improvement Co. v. Vollriede</u>, 11 Wis. 2d 440, 447, 105 N.W.2d 789 (1961) (quoting <u>Bank of Eagle v. Pentland</u>, 197 Wis. 40, 42, 221 N.W. 383 (1928)); <u>Bettack v. Conachen</u>, 235 Wis. 559, 571, 294 N.W. 57 (1940) (adverse possession requires "something which indicates what is known in the law as a hostile intent, that is, intent to claim title in hostility to the true owner").

open, notorious, continuous, and exclusive use are established. If they are, hostility is presumed. See Burkhardt, 17 Wis. 2d at 139 ("If the elements of open, notorious, continuous and exclusive possession are satisfied, the law presumes the element of hostile intent"). There is rarely a dispute about whether possession is hostile, for the simple reason that the party bringing the claim usually intends to possess the property in question. In such cases, a possessor need only present evidence regarding a property's observable physical characteristics, making it the "sole test" for adverse possession. See Ovig, 142 Wis. at 248. Nevertheless, while the presumption of hostility allows adverse possession to be established on the basis of the physical characteristics of possession alone, evidence can still be admitted to show that an essential element has not been satisfied. This evidence is not part of the "sole test" for adverse possession, however, because it is not required for a successful claim.

¶31 In Allie, we explained why the respondent's subjective belief was insufficient to support the circuit court's finding about the property's true boundary line. Allie, 88 Wis. 2d at 347. Our statement that "subjective intent . . . is irrelevant" is accurate insofar as it describes an adverse possession case in which the elements of open, notorious, continuous, and exclusive use are established, and a possessor's hostile intent is therefore presumed. However, Allie does not stand for the principle that subjective intent is never relevant. For example, in Allie, we went on to consider the intent of both

20

parties in relation to the disputed property's true boundary line. Id. (noting that the respondent "considered the fence to be the lot line" and "[t]he appellants did not consider the fence to be the lot line . . . ."). Ultimately, we held in Allie that the property was not adversely possessed because the respondent's possession was not exclusive. However, this conclusion was not based on any determinations about the respondent's subjective intent to claim title. Id. at 348. Indeed, in both Allie and Ovig, it was understood that the possessor intended to claim possession of the property.

¶32    As discussed below, because evidence that a party did not subjectively intend to claim title to property is admissible to rebut a presumption of hostility, the circuit court properly considered evidence that the Somas expressly disclaimed ownership of the lakefront strip and sought permission for its use.

C. The Circuit Court Properly Held that the Wilcoxes Failed to Establish Adverse Possession

¶33 Applying our reasoning to the facts of this case, we agree with the circuit court's conclusion that the Wilcoxes failed to establish adverse possession of the lakefront strip. The circuit court heard testimony demonstrating that the Somas had expressly disclaimed ownership of the lakefront strip and asked permission to make improvements to the property. Based on this testimony, the circuit court found that the Somas "never claimed to own [the lakefront strip]. They obtained permission whenever they made improvements." The circuit court properly

21

considered this evidence and found that the Somas "did not intend their actions to be hostile to any ownership interest." As we have held, express statements disclaiming ownership of property are relevant in an adverse possession case in order to rebut a presumption of hostility. Similarly, the fact that the Somas sought and received permission to use the lakefront strip is relevant evidence to rebut the presumption that the Somas claimed title to the property.[20] A request for permission is relevant under the circumstances regardless of whether it is sought from the true owner, because the request goes to the possessor's subjective intent to claim title. See, e.g., Stone Bank Improvement Co. v. Vollriede, 11 Wis. 2d 440, 447, 105 N.W.2d 789 (1961) (quoting Bank of Eagle v. Pentland, 197 Wis. 40, 42, 221 N.W. 383 (1928)) ("To constitute adverse possession there must be the fact of possession and the hostile intention,-the intention to usurp possession. Mere permissive possession is never a basis for the statute of limitations").

¶34 Having determined that the Somas lacked a hostile intent, the circuit court concluded that the Wilcoxes failed to

---

[20] The titleholders assert that permissive use is also relevant to the exclusivity element of adverse possession. As discussed infra note 21, we do not address the issue of exclusivity because our holding on the hostility element is decisive.

establish adverse possession of the lakefront strip.[21]    The
burden of proof was on the Wilcoxes.  The titleholders, as the
true owners, were entitled to the benefit of having "all
reasonable presumptions" made in their favor.   Allie, 88
Wis. 2d at 343; Zeisler, 24 Wis. 2d at 198.   We agree with the
circuit court that the Wilcoxes failed to meet their burden and
the facts were not sufficient to establish that they adversely
possessed the lakefront strip.

### IV.   CONCLUSION

¶35 We hold that a party's subjective intent to claim
title to property is relevant to rebut the presumption of
hostility that arises when all other elements of adverse
possession are established.   Wisconsin Stat. § 893.25 requires
that property be possessed "under claim of title" to establish
adverse possession.   The plain meaning of the "claim of title"

---

[21] The circuit court also held that the Wilcoxes did not
satisfy the elements of exclusive, notorious, and continuous use
of the property.  The titleholders argue that possession was not
exclusive because the Somas asked for permission to use the
property and allowed the Ducks to enter the property in 1982.
In order to reach the central issue in this case, we assume,
without deciding, that the elements of exclusive, notorious, and
continuous use were met and the presumption of hostility was
triggered.  We therefore need not consider whether the circuit
court properly considered evidence regarding the Somas'
subjective intent in relation to these other elements.  The
outcome in this case would be the same regardless.

We note, however, that the court of appeals based its
decision to reverse the circuit court on the premise that if
hostility was established, there was "no remaining issue in need
of resolution."  In fact, had the circuit court erred in regards
to the hostility element, the additional elements of exclusive,
notorious, and continuous use would still need to be addressed.

requirement is that a party must intend to claim possession of the disputed property. Therefore, in order to gain title by adverse possession, the adverse claimant and all predecessors in interest must have the actual intent to possess the property under a claim of ownership. The Somas' express declarations of non-ownership and requests for permission to use the lakefront strip were sufficient to support the circuit court's conclusion that they lacked the requisite hostile intent to adversely possess the property. Because the circuit court properly considered the Somas' subjective intent and concluded that the Wilcoxes failed to establish adverse possession for the requisite statutory period, we affirm the judgment of the circuit court, and we need not remand for further proceedings. For these reasons, the decision of the court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed.

¶36 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. I agree with the well-reasoned published opinion of the court of appeals. <u>Wilcox v. Estate of Hines</u>, 2013 WI App 68, 348 Wis. 2d 124, 831 N.W.2d 791.

¶37 The majority opinion seems to introduce a minefield of blanket pronouncements and unanswered questions into the varied fact scenarios that adverse possession cases provide.

¶38 For the foregoing reasons, I dissent.