COURT OF APPEALS

DECISION

DATED AND FILED

July 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP606**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016CV105**

**IN COURT OF APPEALS
DISTRICT III**

ROGER V. JACKSON AND DEBRA JACKSON,

    PETITIONERS-RESPONDENTS,

  V.

KAY D. CHILDS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Burnett County: MELISSIA R. MOGEN, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kay Childs appeals a judgment, entered following a bench trial, determining that Roger and Debra Jackson acquired title to a parcel

of land by adverse possession. Childs argues the evidence at trial was insufficient to establish adverse possession. We disagree and affirm.

## BACKGROUND

¶2 The Jacksons and Childs own adjacent parcels of land in Burnett County, each approximately forty acres in size. In 1987, Childs and her late husband acquired her parcel of land, which lies to the east of the Jacksons' parcel. The Jacksons acquired their parcel of land in 1991.

¶3 In 2000, a surveyor determined that a survey stake between the parties' respective properties was placed approximately 127 feet east of where the actual boundary line exists. Given this discovery, the Jacksons learned that an approximately 2.20-acre parcel of land that they had believed to be their property was actually Childs' property. This 2.20-acre parcel, which we will refer to as the "disputed parcel," is depicted below:[1]

---

[1] The illustration was prepared by this court and is intended as a reference aid for purposes of this opinion only. It is based on an exhibit entered into evidence during the bench trial, which the circuit court annotated and attached to its written decision granting judgment in favor of the Jacksons. In that decision, the court determined that although the disputed parcel is one contiguous piece of property, it is best "viewed as four sections." The parties have adopted the court's approach on appeal, and we follow suit. As seen in our illustration, we refer to these four sections as: (1) the Homestead Area; (2) the Viewing Corridor; (3) the Walking Trail and Boat Landing Area; and (4) the Wooded Area.



¶4      Subsequently, the Jacksons and Childs' late husband met on three occasions in attempt to resolve the status of the disputed parcel.  Childs' husband purportedly was willing to cede title to the Jacksons without requiring payment for the property itself, but he wanted the Jacksons to pay for any necessary legal fees. In 2013, he passed away before any transfer of title had taken place.

¶5      In 2016, the Jacksons filed the instant lawsuit, seeking to quiet title to the disputed parcel.  Their complaint alleged that "since the mid-1970s [the Jacksons] and their predecessors had been in actual continued occupation" of the disputed parcel, and therefore had obtained title to it through adverse possession, pursuant to WIS. STAT. § 893.25 (2017-18).[2]  In January 2019, the circuit court held a bench trial on the Jacksons' adverse possession claim.

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶6      At trial, Debra Jackson testified that she and her husband first visited what later became their property in 1987, when it was listed for sale. They did not purchase the property at that time, however, due to its price. Debra testified that when she first viewed the disputed parcel, the Homestead Area consisted of a house, garage, and yard. Further, the Viewing Corridor at that time allowed for a "very open" view down to the disputed parcel's shoreline.[3]

¶7      Debra also testified that after she and her husband purchased their property in 1991, they moved into the house located in the Homestead Area. Subsequently, they maintained the Viewing Corridor until approximately 2015, when they ceased doing so due to the uncertainty involved with the dispute that ultimately gave rise to the litigation in this case. Debra explained that maintaining the Viewing Corridor, which is located on a "very steep" hill and terminates at the disputed parcel's shoreline, required trimming down trees and brush "[e]very few years."

¶8      Debra also stated that, since 1991, the Jacksons had maintained the Walking Trail that "connects our yard down to the water, down to that dock and where we have always had a boat or two." Debra testified that maintaining the Walking Trail consisted of "picking the brush off it because the brush falls down a lot and mowing it."

¶9      Regarding the Wooded Area, Debra testified that she and her family "[h]unted on it, snowmobiled through it, four-wheeled through it. The grandkids

---

[3] One of the survey maps entered into evidence during the bench trial labels the water abutting the parties' properties as "Unnamed Lake," and another labels it as "Unnamed Pond." Debra testified the body of water is the "backwaters of Birch Island Lake."

play on it, the grandkids have built forts out there, and we had that property logged [in the early to mid-1990s]. And then after the storm in 2011, we had it cleaned up."

¶10 Roger Jackson gave testimony largely similar to that of Debra's. He also further explained that he and his family had a "couple deer stands" in the Wooded Area and that they cut firewood from that location "every spring and fall."

¶11 Childs testified that she considered her property abutting the Jacksons' property a "wild 40," meaning that there are no walking trails or structures located on it.[4] She conceded in her testimony that the Jacksons had adversely possessed the Homestead Area. She believed, however, that the remaining sections of the disputed parcel remained her property.

¶12 Childs explained that after she acquired the "wild 40," she and her family "were on the pond all the time with canoes and kayaks and boats with motors when the water was high enough to navigate … and we could observe the shoreline" of the disputed parcel. Then, at some point in the mid-1990s, she noticed the Jacksons were trimming the Viewing Corridor, which she found "quite shocking" because she believed the trimming was occurring on her property. She did not, however, "openly confront [the Jacksons] about this because we were so flabbergasted that someone could do this to our property, and what recourse did we have other than to litigate which would have costs us thousands of dollars."

---

[4] Childs resides approximately one half-mile from the disputed parcel, on a parcel of property not at issue in this case.

¶13    Following trial, the circuit court issued a written decision granting judgment in favor of the Jacksons.  The court's decision addressed each of the four sections in the disputed parcel individually, and for each section the court ultimately concluded "the Jacksons have presented sufficient evidence to determine that they have met their burden to prove adverse possession."  Childs now appeals.  Additional facts are included below.

## DISCUSSION

### I.  Standard of Review

¶14    Our review of an adverse possession claim presents a mixed question of fact and law.  *Wilcox v. Estate of Hines*, 2014 WI 60, ¶15, 355 Wis. 2d 1, 849 N.W.2d 280.  We will accept the circuit court's findings of fact unless they are clearly erroneous.  *Id.*  However, whether the facts are sufficient to establish adverse possession is a question of law that we review independently.  *Id.*

### II.  Sufficiency of the Evidence

¶15    The requirements for an adverse possession claim that is not founded on a written instrument are set forth in WIS. STAT. § 893.25, which "codifies the common law elements of adverse possession."  *Wilcox*, 355 Wis. 2d 1, ¶20.  The statute permits a party to acquire title to real property by showing that the party and/or its predecessors in interest adversely possessed the property for an uninterrupted period of twenty years.  Sec. 893.25(1).  To establish adverse possession under § 893.25, a party must show: (1) "actual continued occupation under claim of title, exclusive of any other right"; and (2) that the property was either "[p]rotected by a substantial enclosure" or "[u]sually cultivated or

6

improved." Sec. 893.25(2). In other words, a party claiming adverse possession under § 893.25 must show that he or she used the disputed property for the requisite period of time in an "open, notorious, visible, exclusive, hostile and continuous" manner that would have apprised a reasonably diligent landowner and the public that the party claimed the land as his or her own. *Pierz v. Gorski*, 88 Wis. 2d 131, 137, 276 N.W.2d 352 (Ct. App. 1979).

¶16    A party seeking to claim title through adverse possession bears the burden of proving the above elements by "clear and positive" evidence. *Peter H. & Barbara J. Steuck Living Tr. v. Easley*, 2010 WI App 74, ¶15, 325 Wis. 2d 455, 785 N.W.2d 631. Moreover, the evidence is strictly construed against the claimant, and all reasonable presumptions are made in favor of the true owner. *Id.*

¶17    Childs contends that the evidence pertaining to three of the four sections of the disputed parcel (i.e., the Viewing Corridor, the Walking Trail and Boat Landing Area, and the Wooded Area) was insufficient to establish adverse possession under WIS. STAT. § 893.25. We address, and reject, each of her arguments in turn.

A. Viewing Corridor

¶18    Childs asserts the Jacksons failed to establish that they "usually cultivated or improved" the Viewing Corridor as required by WIS. STAT. § 893.25(2)(b)2.[5] Land is "usually improved" within the meaning of that statute when it is "put to the exclusive use of the occupant as the true owner might use

---

[5] It is undisputed that the disputed parcel was not protected by a substantial enclosure, and that the Jacksons therefore had to establish that it was usually cultivated or improved to succeed on their adverse possession claim. *See* WIS. STAT. § 893.25(2)(b).

such land in the usual course of events." ***Burkhardt v. Smith***, 17 Wis. 2d 132, 138, 115 N.W.2d 540 (1962). "[S]uch use must also be sufficiently visible to give notice of exclusion to the true owner." ***Pierz***, 88 Wis. 2d at 137.

¶19 Childs first argues she lacked the requisite notice of the Jacksons' adverse claim over the Viewing Corridor because the Jacksons "only trim[ming] the tops of the brush and trees every two to four years" was an "incredibly discreet" use of the land. In so arguing, she ignores the circuit court's finding that—far from being incredibly discreet—the Jacksons' "concrete actions in cutting trees and brush" in the Viewing Corridor were "blatant, deliberate, and extremely open." Because Childs does not even attempt to show that finding—which is consistent with Childs' own testimony that she witnessed the tree trimming in the mid-1990s and found it "quite shocking"—was clearly erroneous, we accept it, as we must.

¶20 In a related (and largely undeveloped) argument, Childs appears to contend that the Jacksons did not actually occupy the Viewing Corridor. In support, she observes how Debra testified that—outside of their trimming and maintenance activities—the Jacksons attempted to avoid disturbing the area "because the deer love crossing right there."

¶21 We are not persuaded that this observation carries the day. In ***Burkhardt***, our supreme court explained:

> Adverse possession without enclosure need not be characterized by a physical, constant, visible occupancy or improved by improvements of every square foot of the land. The argument that one claiming adverse possession must actually lay his hands, so to speak, upon the entire lot and keep them there as if covering the premises with a mantle was soundly rejected by this court in ***Illinois Steel Co. v. Jeka*** (1905), 123 Wis. 419, 101 N.W. 399. Actual occupancy is not limited to structural encroachment which

> is common but is not the only physical characteristic of possession. Actual occupancy means the ordinary use to which the land is capable and such as an owner would make of it. Any actual visible means, which gives notice of exclusion from the property to the true owner or to the public and of the defendant's domination over it, is sufficient.

*Burkhardt*, 17 Wis. 2d at 137-38.

¶22    Notably, Childs herself testified that the topography of the Viewing Corridor is "treacherous and dramatic, it's just impossible almost to walk up and down on it." Consequently, we agree with the Jacksons that "[t]here is simply no doubt that the [V]iewing [C]orridor area was being put to the ordinary use to which the land was capable based upon how treacherous it was for any other use." Moreover, as just explained, the Jacksons' use of the Viewing Corridor was "blatant, deliberate, and extremely open," and thus gave Childs notice of the Jacksons' domination over it.

¶23    In her reply brief, Childs attempts to minimize the import of the *Burkhardt* court's clear statement that "[t]he argument that one claiming adverse possession must actually lay his hands, so to speak, upon the entire lot and keep them there as if covering the premises with a mantle [has been] soundly rejected." *Id.* Childs emphasizes that the claimant in *Burkhardt*, whom our supreme court determined had proven his adverse possession claim, had "spaded up the _entire_ area" he sought to claim by adverse possession. *See id.* at 135 (alteration by Childs). That factual background notwithstanding, the *Burkhardt* court squarely rejected the notion that "every square foot of the land" must be physically occupied or improved by a party pursuing an adverse possession claim. *Id.* at 138. We are not free to disregard that holding. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

9

¶24 Childs next asserts that the trimming of the trees in the Viewing Corridor was not sufficient to show the land was usually cultivated or improved because it did not "substantially change the character of the land." *See Pierz*, 88 Wis. 2d at 137. The record belies this assertion. At trial, the Jacksons introduced photographs of the Viewing Corridor from 1992, 1996, 2001, 2003 and 2009—all of which show a clear view from the Homestead Area to the water located beyond the Viewing Corridor. In contrast, a photograph of the Viewing Corridor taken after the Jacksons ceased maintaining the brush and trees in 2015 (which depicts, according to Debra's testimony, "our view now in the summer") shows a completely obstructed view. Thus, the record supports a conclusion that the maintenance activities caused a substantial change in the character of the land by preventing it from becoming overgrown.

¶25 Finally, Childs asserts there was "no evidence of the activities associated with" the Viewing Corridor taking place prior to 1995 or 1996. Based on that assertion, she contends the circuit court should have viewed "the evidence most favorable to Childs" and concluded that the Jacksons only maintained the Viewing Corridor from 1996 through 2015 (that is, one year short of the twenty year uninterrupted period required by WIS. STAT. § 893.25(1)).

¶26 This argument rests on a false premise. As even Childs admits, the Jacksons testified that the Viewing Corridor existed in 1987 and 1991. As just explained, evidence was also presented that when not maintained, the Viewing Corridor quickly became overgrown and ceased to exist. Thus, the evidence in the record supported the circuit court's reasonable inference that the Jacksons' "predecessors previously did similar cutting and trimming of the trees and brush in the Viewing Corridor and adjoining shoreline, and, therefore, their use would tack on to the Jacksons for calculation of the requisite time period." Consequently, that

finding was not clearly erroneous. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App. 1983).

### B. *Walking Trail and Boat Landing Area*

¶27     Childs contends the Jacksons failed to establish they adversely possessed this section of the disputed parcel for two reasons. First, she argues that because the Jacksons testified they maintained the Walking Trail (by mowing it and clearing brush from it) at a width of ten to twelve feet from 1991 through approximately 2004, but only at a width of four feet thereafter, they failed to establish the twenty-year uninterrupted period of adverse possession required by WIS. STAT. § 893.25(1).

¶28     This argument, which is not supported by citation to any legal authority, is meritless. As explained above, an adverse possessor need not occupy "every square foot of the land" to show they have adversely possessed the land. The Jacksons' continual maintenance of the Walking Trail—even if at a slightly reduced width—from 1991 to 2015 gave "notice of exclusion from the property to [Childs] … and of the [Jacksons'] domination over it." *See Burkhardt*, 17 Wis. 2d at 138. Indeed, as the circuit court aptly noted, notice of exclusion and of the Jacksons' domination over the Walking Trail and Boat Landing Area resulted in "[n]either Childs nor her family ever us[ing] the walking trails or the boat dock, even though they regularly used the Childs' other property."

¶29     Second, Childs argues the Jacksons' use of the Walking Trail and Boat Landing Area "is more consistent with an easement than adverse possession." To support her argument, she relies on *Pierz* and *Steuck Living Trust*. Both cases, however, are distinguishable on their facts.

11

¶30    In *Pierz*, we concluded that a house, garage, shed, outbuildings, yard and garden were visibly improved from a wild area. *Pierz*, 88 Wis. 2d at 137-39. We determined, however, that a "logging road" leading north from the house to a "swamp" or "channel" was "at best consistent with an easement rather than adverse possession." *Id.* at 135, 138. We reached that conclusion because the logging road was overgrown and not even "visible to a trained forester." *Id.*

¶31    Similarly, in *Steuck Living Trust*, we considered, as relevant here, whether a dirt road and walking trail that ran through a remote, forested area to a lake supported an adverse possession claim over that area. *See Steuck Living Trust*, 325 Wis. 2d 455, ¶6. The true owner in that case testified he went to the disputed area of land "once or twice a year and trie[d] to observe it from a distance because walking through it defeats the purpose of a sanctuary. He never noticed persons trespassing in the disputed area nor saw anything that caused him to believe someone was doing something of a permanent nature." *Id.*, ¶7. In that light, and relying on *Pierz*'s rationale that an improvement such as a trail or road must be "sufficiently visible" to support an adverse possession claim, we concluded the dirt road and walking trail were "more consistent with an easement … than adverse possession." *Steuck Living Trust*, 325 Wis. 2d 455, ¶¶20, 23.

¶32    Here, in contrast to *Pierz* and *Steuck Living Trust*, the Walking Trail itself was undisputedly well maintained and highly visible. Moreover, instead of terminating at a natural feature such as a swamp or lake, the Walking Trail connected two areas openly occupied by the Jacksons—the Homestead Area and the Boat Landing Area. Regarding the former, there is no dispute that it was readily apparent that the Jacksons were occupying the area. As to the latter, Childs herself testified that it is easy to view the Boat Landing Area (which has

had a permanent dock installed since at least 1987) from her other properties or when she is on a boat on Birch Island Lake.

¶33    Although Childs now characterizes the Jacksons' use of the Walking Trail and Boat Landing Area as "limited and sporadic," the circuit court made a contrary finding.  Specifically, the court found that the "Jacksons, their friends, and their family, have frequently went down the path to the landing and went on the boat or used kayaks, enjoyed the dock, and used the water at the shoreline. They regularly mow the Boat Landing Area and have kept it clean and clear." Once again, because Childs does not attempt to show that finding was clearly erroneous, we must accept it.  As such, we conclude that the Jacksons' activities in this section of the disputed parcel showed they "not only planted [their] flag of hostility but kept it there, waving."  *See Burkhardt*, 17 Wis. 2d at 139.

### C.  Wooded Area

¶34    In regard to the Wooded Area, Childs asserts the Jacksons' activities in the area (i.e., hunting, snowmobiling, logging, four-wheeling, and cutting firewood) were the type of outdoor activities "consistent with sporadic, trivial and frequently benign trespass" and therefore insufficient to establish adverse possession.  *See Steuck Living Trust*, 325 Wis. 2d 455, ¶23 (citing *Pierz*, 88 Wis. 2d at 138-39).  In that vein, she notes that, like the true owner in *Steuck Living Trust*, she never noticed any of the Jacksons' activities in the Wooded Area.

¶35    As the circuit court ably explained in its written decision, Childs' argument fails to consider the Jacksons' activities in the Wooded Area (both individually and collectively) in connection with their activities in the rest of the disputed parcel.  When analyzing whether the evidence is sufficient to establish

13

the elements of adverse possession, we must consider the totality of the evidence regarding the Jacksons' use of the disputed parcel. *See, e.g.*, ***Kruckenberg v. Krukar***, 2017 WI App 70, ¶13, 378 Wis. 2d 314, 903 N.W.2d 164.

¶36    This principle is especially important in this instance because, as our above illustration demonstrates, the Wooded Area lies entirely to the west of the other sections of the disputed parcel.  Consequently, the Jacksons' actions in the remainder of the disputed parcel (for reasons already explained) established a discernible boundary line between Childs' property to the east and the Wooded Area.  Stated differently, even if the Jacksons did not have a "physical, constant, visible occupancy … of every square foot of the land" in the Wooded Area, their actions in the whole of the disputed parcel, taken together, were sufficient to "give[] notice of exclusion" from the Wooded Area to Childs and of the Jacksons' "domination over it."  *See **Burkhardt***, 17 Wis. 2d at 137-38.

¶37    To further explain, when determining whether the use to which a party puts a parcel of land supports an adverse possession claim, we must consider whether the use gave "reasonable notice [to the true owner] that the claimant is asserting ownership" of the disputed parcel.  *See **Steuck Living Trust***, 325 Wis. 2d 455, ¶17.  In this case, it would be unreasonable to conclude that Childs, while viewing the open and obvious activities taking place in the eastern sections of the disputed parcel, was not on notice that the Jacksons were claiming ownership of the small portion of land lying between those sections and the remainder of the Jacksons' property.  Accordingly, the circuit court did not err by concluding that

Childs' "failure to respond" to those activities resulted in her losing title to the entire disputed parcel.[6] *See **id.***

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Childs, relying primarily on ***Droege v. Daymaker Cranberries, Inc.***, 88 Wis. 2d 140, 276 N.W.2d 356 (Ct. App. 1979), raises an additional argument that because the Jacksons provided the circuit court with only a legal description of the entire disputed parcel, the Jacksons failed to supply the "requisite legal description" necessary for the court to award only a portion of the disputed parcel to the Jacksons. Childs acknowledges, however, that we need not reach this argument unless we determine the court erred by concluding the Jacksons adversely possessed all four sections of the disputed parcel. Because we conclude the court did not so err, we do not further address this argument.