COURT OF APPEALS
DECISION
DATED AND FILED

April 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2020AP541**

STATE OF WISCONSIN

Cir. Ct. No. **2019CV21**

IN COURT OF APPEALS
DISTRICT III

ADEM LLC,

PLAINTIFF-RESPONDENT,

V.

WADE WECKLER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Door County: D. T. EHLERS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Wade Weckler appeals a judgment dismissing his adverse possession counterclaim against ADEM LLC.  Weckler argues the circuit

court erred in several respects by concluding that he failed to establish adverse possession of the disputed property. In addition, Weckler argues that the court erroneously excluded certain testimony and improperly considered the familial relationships between some of the individuals who owned the properties involved in this case. We reject Weckler's arguments and affirm.

## BACKGROUND

¶2 Weckler and ADEM own adjacent parcels of land in Door County. Weckler's property is located to the southeast of ADEM's property. Weckler inherited his parcel sometime after his father's death in 2000, and before that his father had owned the property since 1968 or 1970. ADEM obtained title to its property in October 2018 via a personal representative's deed. Prior to that time, ADEM's property was owned by Weckler's uncle, Sherwin Weckler.[1]

¶3 In February 2019, ADEM filed the instant lawsuit against Weckler, asserting that Weckler was storing personal property on ADEM's land without ADEM's permission; that ADEM had asked Weckler to remove the personal property, but Weckler refused to do so; and that Weckler's continued storage of personal property on ADEM's land without permission constituted a trespass. ADEM sought an award of damages and an order requiring Weckler to remove his personal property from ADEM's land.

¶4 In response, Weckler filed a counterclaim asserting that he had acquired title to the relevant portion of ADEM's property by adverse possession.

---

[1] Throughout the remainder of this opinion, we refer to Wade Weckler as "Weckler" and to Sherwin Weckler as "Sherwin."

2

Weckler therefore sought a declaration that he owned the property in question and a judgment dismissing ADEM's trespass claim.

¶5      The circuit court held a bench trial in September 2019. At trial, Weckler did not dispute that he had placed personal property in the disputed area or that the disputed area fell within the legal description of ADEM's property. The only contested issue was whether Weckler had obtained title to the disputed area via adverse possession.

¶6      Weckler testified at trial that he and his father—his predecessor in interest—had maintained the disputed area for more than twenty years by mowing the grass and "picking stones." Weckler also testified that both he and his father had stored equipment and parked vehicles in the disputed area. In addition, Weckler testified he had "put gravel down" in the disputed area sometime between 2005 and 2008. Weckler further testified that he had plowed snow in the disputed area. Finally, Weckler testified that the edge of the disputed area is marked by a hill approximately eight inches to one foot tall, which distinguishes the disputed area from the rest of ADEM's property.

¶7      Weckler also relied on the testimony of John Denil, who testified he had known Weckler and Sherwin for at least thirty years and had performed work for Sherwin on his property. Denil testified that the hill in the disputed area created a "visible division" between Sherwin's (now ADEM's) and Weckler's properties. Denil also testified he had always understood that the hill was the property line, such that the disputed area was part of Weckler's property. Denil further testified that Sherwin had never instructed him to do any work in the disputed area.

¶8    Erik Nelson, ADEM's principal, testified on behalf of ADEM. Several aerial photographs and survey maps of the parties' properties from different points in time were introduced into evidence during Nelson's testimony. Nelson testified he did not have any personal knowledge regarding the use of the disputed area over the years beyond what he could infer from the aerial photographs and surveys.

¶9    Following the bench trial, and at the parties' invitation, the circuit court conducted a personal inspection of the relevant property. The court then issued a written decision concluding that Weckler had failed to establish adverse possession of the disputed area. The court subsequently entered a judgment dismissing Weckler's adverse possession counterclaim and ordering him to remove his personal property from the disputed area. Weckler now appeals.

## DISCUSSION

¶10    Our review of an adverse possession claim presents a mixed question of fact and law. *Wilcox v. Estate of Hines*, 2014 WI 60, ¶15, 355 Wis. 2d 1, 849 N.W.2d 280. We accept the circuit court's factual findings unless they are clearly erroneous. *Id.* However, whether the facts are sufficient to establish adverse possession is a question of law that we review independently. *Id.*

¶11    WISCONSIN STAT. § 893.25(1) (2019-20),[2] permits a party to acquire title to real property by showing that the party and/or its predecessors in interest

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

4

adversely possessed the property for an uninterrupted period of twenty years. To establish adverse possession under § 893.25, a party must show: (1) "actual continued occupation under claim of title, exclusive of any other right"; and (2) that the property was either "[p]rotected by a substantial enclosure" or "[u]sually cultivated or improved." Sec. 893.25(2). To constitute adverse possession, a claimant's use of the property "must be open, notorious, visible, exclusive, hostile and continuous, such as would apprise a reasonably diligent landowner and the public that the possessor claims the land as his [or her] own." *Pierz v. Gorski*, 88 Wis. 2d 131, 137, 276 N.W.2d 352 (Ct. App. 1979).

¶12     A party seeking to claim title through adverse possession bears the burden of proving the elements set forth above by clear and positive evidence. *Peter H. & Barbara J. Steuck Living Tr. v. Easley*, 2010 WI App 74, ¶15, 325 Wis. 2d 455, 785 N.W.2d 631. In addition, the evidence is strictly construed against the claimant, and all reasonable presumptions are made in favor of the property's true owner. *Id.*

¶13     In this case, the circuit court properly determined that Weckler had failed to establish the elements of his adverse possession counterclaim by clear and positive evidence. First, the court concluded Weckler had failed to show "actual continued occupation" of the disputed area for at least twenty years. The court noted that Weckler testified he had inherited his property sometime after his father died in 2000, and ADEM had filed suit against Weckler in February 2019. The court therefore found that Weckler's own alleged adverse possession of the disputed area "would fall at least one year short" of the twenty years required by statute.

5

¶14    The circuit court acknowledged that Weckler could theoretically "tack" his father's adverse possession of the disputed area onto his own in order to show twenty total years of adverse possession. The court stated, however, that it found Weckler's and Denil's testimony regarding Weckler's father's use of the disputed area to be "unconvincing at best and self-serving at worst." In other words, the court did not find Weckler's and Denil's testimony in that regard to be credible. When the circuit court acts as the fact finder, it is the ultimate arbiter of the witnesses' credibility and of the weight to be given to their testimony. *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.

¶15    In further support of its conclusion that Weckler had failed to show twenty years of adverse possession, the circuit court relied on aerial photographs of the parties' properties from 2002 and 2007. The court noted that the 2002 photograph did not show any personal property in the disputed area, while the 2007 photograph showed "some" personal property in the disputed area. The court therefore stated those photographs "directly contradict[ed]" Weckler's claim that he and his father had stored personal property in the disputed area for at least twenty years. The court also relied on two survey maps that had been prepared by the same surveyor—a 2018 map that showed "a number of items of personal property" in the disputed area, and a 2005 map that showed "no encroaching personal property." The court reasoned: "Why would [the surveyor] not have shown personal property in the disputed area if it was present in 2005 when his 2018 survey clearly identifies it?"

¶16    The circuit court next concluded Weckler had failed to show that the disputed area was either protected by a substantial enclosure or was usually cultivated or improved. The court rejected Weckler's argument that the hill in the

6

disputed area constituted a substantial enclosure, stating that the trial evidence did not sufficiently establish the hill's location, and that the court "did not see [the hill]" when it personally inspected the parties' properties. The court also noted that there was no evidence as to whether the hill was natural or artificial, and there was no testimony about how the hill would have put ADEM or Sherwin on notice that either Weckler or his father was asserting ownership over the disputed area.

¶17 As for usual cultivation or improvement, in addition to the circuit court again stating that Weckler had failed to prove that he and his father had used the disputed area to store personal property for at least twenty years, the court also rejected Weckler's argument that he and his father had usually cultivated or improved the disputed area by "mow[ing] and maintain[ing] it." The court noted that Exhibits 4 through 13—photographs taken by Nelson shortly before trial—did not show any evidence of mowing or maintenance. The court also stated that the aerial photographs from 2002 and 2007 did not "provide any documentary evidence of the disputed areas being mowed or maintained in any different manner than the adjoining areas of [Weckler's] and [ADEM's] parcels." The court further noted that no Wisconsin case has held that mowing alone is sufficient to constitute usual cultivation or improvement.

¶18 Finally, the circuit court correctly observed that it was required to "strictly construe the evidence against [Weckler] and apply all reasonable presumptions in favor of [ADEM]." Applying that standard, the court concluded Weckler had failed to meet his burden of proof. None of the court's factual findings are clearly erroneous, and we agree with the court that, based on those findings, Weckler failed to establish the elements of his adverse possession claim by clear and positive evidence.

¶19 Weckler nevertheless argues that the circuit court erred in several respects. First, Weckler claims the court erred because it considered only Weckler's use of the disputed area and "did not consider tacking" his father's use. This argument is plainly meritless. As the above summary shows, the court expressly acknowledged that an adverse possession claimant may "tack" his or her use of disputed property to that of a predecessor in interest. However, the court rejected as incredible Weckler's and Denil's testimony regarding Weckler's father's use of the disputed area. We defer to the court's credibility determinations.[3] *See* ***Welytok v. Ziolkowski***, 2008 WI App 67, ¶28, 312 Wis. 2d 435, 752 N.W.2d 359.

¶20 Weckler next argues the circuit court erred because it "dissected the testimony" regarding each claimed use of the disputed area and "refused to evaluate [those uses] collectively." He asserts the court essentially applied a rule that in order to establish twenty continuous years of adverse possession, the "nature and type" of use must be the same for the entire twenty-year period. Again, Weckler misstates the basis of the court's decision. The court did not reject Weckler's adverse possession claim because he failed to prove a single use of the property that had lasted for at least twenty years. Instead, the court considered all of Weckler's claimed uses and determined that, together, they did not exist continuously for the requisite twenty-year time period and did not

---

[3] In his reply brief, Weckler acknowledges that a circuit court is free to make credibility determinations, but he asserts a court must explain why it deems a particular witness's testimony to be incredible. Weckler cites no legal authority in support of this proposition, however, and we therefore need not consider it. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Moreover, the circuit court's decision shows that it found Weckler's and Denil's testimony incredible, at least in part, because it was inconsistent with the aerial photographs and survey maps. On this record, there is no basis for us to upset the court's credibility findings regarding Weckler's and Denil's testimony.

constitute the type of open, notorious, visible, exclusive, and hostile use that would have put ADEM or its predecessor in title on notice that Weckler and his father were claiming ownership of the disputed area. *See Pierz*, 88 Wis. 2d at 137.

¶21     Critically, the circuit court found that Weckler's own use of the property, in any form, had lasted for at most nineteen years. The court then rejected Weckler's and Denil's testimony that Weckler's father had "maintained" the disputed area before Weckler took title to his property. Furthermore, based on the aerial photographs and surveys, the court found that Weckler's father had not stored personal property in the disputed area, as Weckler claimed. Thus, even if Weckler's uses of the property, taken together, constituted the type of use sufficient to give rise to adverse possession, Weckler failed to show that such use continued for at least twenty years, as required by WIS. STAT. § 893.25.

¶22     Weckler also argues the circuit court erred by concluding that Weckler had not met his burden of proof based on a "single aerial photograph from a time long past." Weckler contends a "moment in time analysis does not suffice to defeat a claim of adverse possession." The court did not, however, rely on a single photograph in support of its decision. Instead, the court cited aerial photographs from 2002 and 2007, as well as survey maps from 2005 and 2018. The court—in its role as fact finder—was entitled to rely on that documentary evidence instead of the testimony of Weckler and Denil, which the court found to be incredible.

¶23     Weckler further argues that the circuit court erred by ignoring Nelson's testimony that, after ADEM purchased Sherwin's property in 2018, Nelson cleared a portion of ADEM's property, but only up to the boundary line of the disputed area. Weckler argues this testimony shows that Nelson "deferred to

[Weckler's] sufficiently visible use" of the disputed area. Be that as it may, Nelson's testimony about his own actions following ADEM's purchase of the property in 2018 does not establish that Weckler and his father adversely possessed the disputed area for the requisite twenty-year period. Most importantly, Nelson's testimony does nothing to invalidate the court's findings that: (1) any use of the disputed area by Weckler himself lasted at most nineteen years; and (2) the evidence was insufficient to show that Weckler's father either maintained the disputed area or stored personal property on it.

¶24 Weckler next argues the circuit court erred by finding that the disputed area was not protected by a substantial enclosure. He asserts a substantial enclosure existed under the circumstances of this case because there was "a visible demarcation based upon the maintenance [of the disputed area], the placement of gravel, vehicles parked up to the [boundary of the disputed area], equipment stored, scrap stored, … snow plowing, [and] a swale or hill consistent with the boundary." Weckler cites no legal authority, however, in support of his claim that a "visible demarcation" created by maintenance, the placement of gravel, the parking of vehicles, the storage of equipment and scrap, and snow plowing can satisfy the "substantial enclosure" requirement.[4]

¶25 Moreover, to the extent Weckler claims that a hill in the disputed area qualifies as a substantial enclosure, the circuit court expressly rejected that

---

[4] Weckler cites only ***Kruckenberg v. Krukar***, 2017 WI App 70, 378 Wis. 2d 314, 903 N.W.2d 164, in support of his argument that a "visible demarcation" like the one alleged in this case can constitute a substantial enclosure. ***Kruckenberg***, however, addressed whether a fence constituted a substantial enclosure. ***Id.***, ¶¶11-12. The court stated a fence "is universally recognized as a way to indicate a boundary line." ***Id.***, ¶12. As this case does not involve a fence, ***Kruckenberg*** is inapposite.

claim, noting that it could not locate the hill when it personally viewed the disputed area. In any event, the court observed that there was no evidence as to whether the claimed hill was natural or artificial. Weckler cites no legal authority in support of the proposition that a purely natural boundary can constitute a substantial enclosure for purposes of WIS. STAT. § 893.25. *Cf. Illinois Steel Co. v. Bilot*, 109 Wis. 418, 441, 85 N.W. 402 (1901) (stating a substantial enclosure "may be artificial in part and natural in part"); *Steuck Living Tr.*, 325 Wis. 2d 455, ¶29 (holding that a "natural, swampy area on a titleholder's property does not provide reasonable notice that someone else is or may be claiming title to land on the other side" and "difficulty of natural access does not contribute to providing notice to the … titleholder that the owner of the [adjacent] property … is or may be claiming ownership"). As such, the court properly concluded Weckler had not met his burden to show that the hill qualified as a substantial enclosure.

¶26 Weckler next contends that the circuit court erred by excluding testimony about a statement that Sherwin allegedly made prior to his death. During Weckler's direct examination at trial, his attorney asked: "Did your Uncle Sherwin ever acknowledge that [i.e., the hill in the disputed area] as your property line?" ADEM's attorney objected to that question on hearsay grounds, and the court sustained his objection.

¶27 On appeal, Weckler argues the circuit court erred because Sherwin was unavailable as a witness under WIS. STAT. § 908.04(1)(d), and the statement in question was therefore admissible under WIS. STAT. § 908.045(4) as a statement against interest. We will not reverse a circuit court's decision to admit or exclude evidence unless the court erroneously exercised its discretion. *Weborg v. Jenny*, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191. A court erroneously

11

exercises its discretion when it applies an improper legal standard or makes a decision not reasonably supported by the facts of record. ***Id.***

¶28 Under WIS. STAT. § 908.045(4), a statement against interest is not excluded by the hearsay rule if the declarant is unavailable as a witness. The statute defines a statement against interest as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true.

***Id.*** Weckler asserts Sherwin's alleged statement about the property line qualified as a statement against interest because "a statement regarding the ownership of real estate that is arguably yours[] is a statement contrary to the declarant's pecuniary or proprietary interest that a reasonable person in the declarant's position would not have made … unless the person believed it to be true."

¶29 Weckler's argument fails because he never made an offer of proof as to what Sherwin actually said about the property line. His attorney's question about whether Sherwin ever acknowledged the hill in the disputed area as the property line clearly called for hearsay testimony. In response to ADEM's objection, Weckler's attorney argued that Sherwin's statement was admissible under WIS. STAT. § 908.045(4), but he never made an offer of proof as to what Sherwin said, when he said it, or what the context of his statement was. In theory, we could infer from the question that Sherwin acknowledged the hill as the property line. However, without an offer of proof, there is no basis for us to conclude that Sherwin understood that such a statement was contrary to his own

pecuniary or proprietary interest. As such, we cannot conclude that the circuit court erroneously exercised its discretion by excluding testimony about Sherwin's alleged statement.

¶30 Finally, Weckler argues the circuit court erred by considering the familial relationships between Weckler, his father, and Sherwin when analyzing Weckler's adverse possession claim. At the end of its written decision, the court stated:

> The fact that these parcels were owned initially by brothers and then an uncle and nephew is significant in this case. [Weckler's] and … Denil's testimonies that [Weckler] and his father's lawn mowing and rock maintenance in the disputed area were enough to put [Sherwin] on notice that his brother and nephew were claiming or attempting to establish ownership over this parcel are not convincing or persuasive. There is no reported case in Wisconsin that I am aware of that provides that adverse possession cases between relatives are to be treated any differently than cases between nonrelated parties. But the fact that until [ADEM] acquired [its] parcel from [Sherwin] in 2018 these lands were owned by relatives is a fact which cannot be ignored.

Weckler argues the court's consideration of these familial relationships was erroneous because the court conceded there was no case law supporting such consideration. Thus, Weckler argues the court's decision was based, in part, on "completely irrelevant factors." Weckler further argues that the court's consideration of the familial relationships is "especially concerning" given the court's decision to exclude testimony regarding Sherwin's statement about the property line.

¶31    We conclude the circuit court properly considered the familial relationships between Weckler, his father, and Sherwin.[5]  Weckler cites no legal authority that prevented the court from considering the familial relationships.  Moreover, we agree with the court that under the circumstances of this case, those relationships were relevant to whether Weckler had established adverse possession of the disputed area.

¶32    Again, in order to prevail on an adverse possession claim, a claimant must establish that his or her use of the property in question was open, notorious, visible, exclusive, and hostile, such that it would apprise a reasonably diligent landowner and the public that the claimant was asserting a claim of ownership over the property.  *Pierz*, 88 Wis. 2d at 137.  Here, the circuit court could reasonably conclude that a landowner would be less likely to understand that a family member who owned adjacent property—as opposed to a non-family member—was acting adversely to the landowner's possessory interest by maintaining and mowing an area on the border of the two properties and storing personal property in that area.  A family member's act of maintaining such property could reasonably be viewed merely as an act of kindness, as opposed to an attempt to assert an ownership interest over the property.  Similarly, a landowner could reasonably conclude that a family member who owned adjacent property was simply taking advantage of a familial relationship for his or her own convenience by storing personal property on the landowner's land, rather than attempting to claim ownership of the land in question.

---

[5] ADEM concedes in its appellate brief that the circuit court's "reference to the relationship of the various owners of the parcels in question [was] misplaced."  However, we are not bound by a party's concession of law.  *State v. Anderson*, 2014 WI 93, ¶19, 357 Wis. 2d 337, 851 N.W.2d 760.

¶33     We therefore agree with the circuit court that the familial relationships in this case were relevant to the court's consideration of Weckler's adverse possession claim.   To the extent Weckler claims the court erred by considering the familial relationships but refusing to consider Sherwin's alleged statement about the property line, we again note that Weckler failed to make an offer of proof regarding Sherwin's statement.   As such, we cannot conclude that the court erred by excluding Weckler's proffered testimony about that statement.

¶34     In summary, we conclude the circuit court's factual findings—which are not clearly erroneous—support a determination that Weckler did not meet his burden to prove that he and his father adversely possessed the disputed area for twenty continuous years.   We reject each of Weckler's claims of circuit court error, and we therefore affirm the judgment dismissing Weckler's adverse possession counterclaim.

*By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.